## WILLIAM H. H. WADE v. CHRISTOPHER C. DE WITT.

To constitute a breach of warranty of soundness of a slave, the disease must have existed in a formed state at the time of the sale, and have been of a permanent nature, calculated materially to affect the value of the slave. A disease of any kind, if easily removed, but by neglect or maltreatment allowed to prove fatal, is not unsoundness, within the meaning of the warranty.

The privilege of counsel, in their address to the jury, to read from legal authorities, or from works of general science, extracts pertinent to the case, in support of their argument, ought not to be abridged. It is a valuable privilege; yet, so susceptible of abuse, that the extent, and manner of its exercise must be intrusted in a great measure to the sound discretion of the Court.

A bill of exceptions to the refusal of the Court to permit counsel to read from a legal authority or work of science, must show what it was, and how much, the counsel proposed to read; in order that this Court may see whether it was pertinent, and whether the counsel proposed to confine the reading within reasonable limits.

Error from Gonzales. Tried below before the Hon. Fielding Jones.

Suit by defendant in error against plaintiff in error, commenced September 29th, 1853, for breach of warranty of soundness of a slave Jack, sold by the defendant to the plaintiff on the 8th of January preceding. Answer denying all and singular, &c.; and special pleas that said slave died from exposure and ill treatment; and that he died of a disease called by physicians acute peritonitis and pleuritis of but short standing, of which he was not affected when sold by defendant to plaintiff.

The unprofessional testimony disclosed no facts that would have had any weight, standing alone, in such a controversy. The slave had been confined four or five days before his death. Thirteen hours after his death, a *post-mortem* examination was made by several physicians, who testified that they found the heart obstructed by a fibro-adipose substance within the cavity, which must have been from six months to two or three years in forming, and which had produced inflammation and obstruction to the arterial circulation, the proximate cause of the death of the slave. This view of the case was supported by six regular

Wade v. DeWitt.

physicians, nearly all of whom had been present at the *post-mortem* examination.

Two of the principal physicians had given defendant descriptions of the *post-mortem* examination, which, taken together, were said at the time to be complete : and defendant took the depositions of nine physicians in New Orleans, nearly all of whom were professors in the University of Louisiana, as to their opinions upon the descriptions given. Their testimony was to the effect that the description of the *post-mortem* examination was imperfect, and that it was therefore impossible for them to say with certainty of what disease the slave died, or how long it had continued. Several stated, however, that the slave could not have lived ten days with such an obstruction as was described in the cavity of the heart ; that it would form in that time, and that there were no unusual appearances in the *post-mortem* examination, from what are found in cases of death from acute endocarditis, complicated perhaps with pleurisy.

The Court instructed the jury as follows :—

If you believe from the testimony, that the negro was diseased when he was sold by defendant to plaintiff, and that he died of the disease afterwards, you should find for the plaintiff the value of the negro.

If you believe that the negro was not diseased when he was sold to plaintiff, but died from disease acquired afterwards, you should find for defendant.

Additional instructions were not asked by either party. Verdict and judgment for plaintiff. Motion for new trial overruled.

It appeared by bill of exceptions, that one of the defendant's counsel offered to read from and comment upon, during his argument, "Hope on the Heart," a work referred to by one of the plaintiff's witnesses as a standard medical authority ; to the reading and commenting upon said work plaintiff objected, and the Court sustained the objection ; to which ruling defendant excepted. The clause in the statement of facts, here referred to, was as follows : "Witness referred for his opinion to Hope on the Heart."

*Ireland* and *Waul & Wilson*, for plaintiff in error. The Court erred in arresting counsel in his argument. (2 G. & W. on New Trials.)

The verdict was not supported by the evidence. (3 G. & W. on New Trials, 1258 ; 12 Sm. & M. 336.)

*Mills*, for defendant in error.

WHEELER, J. There is no complaint of the charge of the Court. As applied to the evidence, it was doubtless correct, and a sufficient exposition of the law of the case. In a late case, determined by the Court of Appeals of South Carolina, in an action upon a breach of warranty of the soundness of a negro, it was held, substantially, that to constitute the breach of warranty, the disease must have existed in a formed state at the time of the sale, and have been of a permanent nature, calculated materially to affect the value of the slave. A disease of any kind, if easily removed, but by neglect or maltreatment allowed to prove fatal, is not unsoundness within the meaning of the warranty. (Gadsden v. Raysor, 9 Rich. L. R. 276.) This doctrine, although, perhaps, not strictly in accordance with the doctrine of some of the English authorities cited in Murphy v. Crain, (12 Tex. R. 297,) is substantially the same which was the ground of the decision in that case. The charge of the Court in this case, as applied to the evidence, does not contravene this doctrine.

But it is insisted that the verdict was not warranted by the evidence. The evidence, it is true, was conflicting, but there was such evidence on both sides as to make the jury the exclusive tribunal for the decision of the question of fact. We cannot say that the verdict was contrary to the weight of evidence. It is supported by the testimony of the witnesses who had the best opportunity of forming right conclusions; and it cannot be denied that the jury might well give more weight to the opinions of the professional witnesses, who testified to matters within their own observation, than those whose opinions were given upon a hypothetical case.

It is insisted for the appellant, that the Court erred in refusing to permit his counsel to read and comment to the jury upon a medical work, as shown by the bill of exceptions. In Legg v. Drake, (1 McCooke's Ohio R. 286; 2 Gr. & Waterman on N. Trials, 686–7,) where a similar question arose, the Court said: "While the right of a party to be heard by his counsel, on the trial of his cause, is not to be questioned, and is often of great service in the investigation of questions both of law and fact; yet inasmuch as this privilege may be liable to abuse, to the great hindrance and annoyance of Courts, in the progress of business, the extent and manner of its exercise must, in some

Wade v. De Witt.

measure, rest in the sound discretion of the Court. Although unlimited license in range and extent is not allowed to counsel in their address to the Court and jury, yet no pertinent and legitimate process of argumentation, within the appropriate time allowed, should be restricted or prohibited. And it is not to be denied but that a pertinent quotation or extract from a work on science or art, as well as from a classical, historical, or other publication, may, by way of argument or illustration, be not only admissible, but sometimes highly proper. And it would seem to make no difference whether it was repeated by counsel from recollection or read from a book. It would be an abuse of this privilege, however, to make it the pretence of getting improper matter before the jury as evidence in the cause." The Court held the refusal to permit counsel to read from a medical work in that case, no ground for reversing the judgment, because the bill of exceptions did not show that the passage which the counsel proposed to read had any relevancy to the cause on trial, or came within the appropriate and legitimate scope of argument. The same observation will apply to the bill of exceptions in this case. The privilege of counsel, in their address to the jury, to read from legal authorities, or from works of general science, extracts pertinent to the case, in support of their argument, ought not to be abridged. It is a valuable privilege; for, as has been well said, "An able and diligent advocate could scarcely sum up a case of any magnitude without repeating, either from memory or from the books, the principles of law bearing on the controversy, as laid down by the best authors. And where authorities are cited it is better, in order to avoid mistake, that they should be produced in Court to speak for themselves, than that the doctrine inculcated by them should be taken from the mouth of counsel." (2 Gr. & Wat. on N. Trials, 685.) Yet this privilege is so susceptible of abuse, that the extent and manner of its exercise must be intrusted in a great measure to the sound discretion of the Court. It is more reasonable to suppose the Court will not abridge it improperly, than that the advocate, actuated by the strong desire for success, and triumph over his adversary, will not abuse it. It is better for the administration of justice and the protection of the rights of parties, that the exercise of this privilege should be regulated by judicial discretion, than that it be left to the unlimited discretion of counsel, governed by the powerful motives of interest and ambition. And I apprehend it would require a clear case of the abuse of judicial

26

discretion, to the injury of the party, to authorize the reversal of a judgment for such a cause. It ought clearly to appear that the rights of the party were denied, or improperly abridged by the Court, to make a matter of this kind a ground of reversal. It does not so appear in the present case. It does not appear that the portion of the book proposed to be read and commented on was at all material, or within what limit the counsel proposed to confine his reading and comment; and certainly the Court must require that the argument be pertinent to the case, and be confined within a reasonable limit. We are of opinion that there is no error in the judgment, and it is affirmed.

Judgment affirmed.