## H. & T. C. R. R. CO. v. S. M. NICHOLS.

### SUPREME COURT, AUSTIN TERM, 1882.

In an action against a railroad company by a passenger upon one of its passenger trains for damages received by the plaintiff in an accident alleged to have been occasioned by the company's wanton disregard of its legal obligations, and by its gross negligence in running its train, and in permitting its bed and track to become grossly defective and unfit for use, wherein the plaintiff recovered $2000 for actual damages and $8000 for exemplary damages, the court trying the cause permitted the counsel for the plaintiff, in his closing argument, over the objection of the defendant, to read to the jury, as was read by plaintiff's counsel in the opening argument, the following quotation from Redfield·on Carriers, coupled with the statement that the author was counsel for railway companies where he lived, viz: " Section 539. The truth is, that common juries, with the highest instincts of justice, have always, in our country, been accustomed to view the matter of railway responsibility for passenger transportation in the light of higher and fuller responsibility than either the courts or the profession," etc.

*Held*, error sufficient to entitle defendant to a new trial.

Appeal from Washington county—Opinion by Stayton, J.—This suit was instituted July 14, 1873, by the appellee, S. M. Nichols, against the appellant, the Houston and Texas Central Railway Company, to recover damages, alleged at $30,500, for personal injuries received by the plaintiff while a passenger on defendant's train of cars, in an accident which occurred about May 1, 1873, whereby the passenger car in which plaintiff was riding was thrown from the track, and the plaintiff's collar-bone was broken, and he was otherwise seriously injured; the plaintiff alleging that said injuries were caused by the wanton disregard of its legal obligations and gross negligence on the part of the defendant in and about the running of said train, and in permitting its road-bed, track, ties and iron rails to become grossly defective, unsafe and unfit for use, and in allowing the same to remain in that condition for a long time, and until said accident occurred.

The case was tried at the fall term, 1875, and resulted in a verdict and judgment for plaintiff for $10,000—$2000 actual, and $8000 exemplary damages—and from this judgment the defendant has appealed.

The jurisdictional question raised in this case is regarded as settled by the former decisions of this court. (Bartee v. H. & T. C. R. R., 36 Texas, 648.)

Upon the trial of the cause, counsel for the appellee, in the clos-

ing argument to the jury, proposed to read to the jury from Redfield on Carriers, as will be hereafter set out; and before doing so, addressed the jury, in substance, as follows: "I will now read, to show you how juries ought to deal with this class of cases, what Judge Redfield, who I understand is the attorney for the railways in his own State, says in regard to the comparative ability of juries and courts to pass upon these questions," at which time counsel for appellant objected to the reading, on the ground that the passage offered to be read was not evidence, and not proper to be considered by the jury, and that if the doctrine enunciated in the passage was matter of law, it should be presented to the court and a charge asked thereon; but the court overruled the objection, on the statement of counsel for appellee, which was true, that his associate had read the same passage in the opening argument, and thereupon counsel for appellee read to the jury, and commented thereon, the following passage from Redfield on Carriers:

"Section 539. The truth is, that common juries, with the highest instincts of justice, have always, in our country, been accustomed to view the matter of railway responsibility for passenger transportation in the light of higher and fuller responsibility than either the courts or the profession. It is not uncommon to have it objected, in our country, against the reason or justice of jury trials, that the result is always the same in all actions for injuries to passengers on railways; the companies are sure to be cast in the action, and this seems to be regarded as an unreasonable reproach. But, when we reflect how much more might be done in all such cases to secure perfect safety and exemption from injury, and how much more really is done both in Great Britain and on the continent of Europe, we can only conclude that the common sense instincts of jurors have raised them to a higher plane of wisdom and justice than that which the courts, or the profession, have yet attained." To which the defendant, by its counsel, excepted.

This is assigned as error, and was also made one of the grounds for a new trial.

While the courts are vested with a large discretion in regard to permitting counsel to read to juries from books, scientific, historical, or legal, for the purpose of illustrating an argument, yet such discretion is not unlimited, and is subject to revision, and when it clearly appears that such discretion has not been wisely exercised, but has been so used as to injure a party litigant, and to give a jury

a false estimate of their duties or powers, it will be good ground for a reversal.

· It would be hard to conceive of a passage more improper to read to a jury than the one above set out. By it they were given to understand that they were to try the cause, not according to the law as given to them by the court, and by the evidence, but by "the highest instincts of justice;" what that might be they were left to infer and determine from the "common sense instincts of jurors," which the author indicated had "raised them to a higher plane of wisdom and justice than that which the courts or the profession have yet attained." The law recognizes no such method of trial.

The ruling of the court by which the reading was permitted gave countenance to the sentiments expressed in the passage, and the jury, under such circumstances, might well conceive that it was as much the law of the case as was the charge of the court.

The fact that the passage was read twice, aggravates rather than alleviates the error.

The cases of Wade v. DeWitt, 20 Texas, 398; Hines v. The State, 3 Texas App., 483, and Hudson v. The State, 6 Texas App., 565, are cases in which exceptions were taken to the ruling of the court in refusing to permit counsel to read from books to the jury, and in them it was held, that as it did not appear that the court had abused its discretion, there was no error.

The right of counsel, in argument, to read to a jury any proper matter, should not be unreasonably restricted, for it is often necessary and highly essential to the clear and proper presentation of a case; but it error to permit to be read the passage which was read in this cause.

When we take into consideration the many elements which juries are permitted to take into consideration in this character of cases for the determination of actual damages, involving, as they do, expenses of cure, including medical bills, value of time lost during cure, fair compensation for physical and mental pain and suffering caused by an injury, any permanent reduction of power to attend to business and earn money which may have resulted from an injury, it may well be questioned whether anything more than what is thus termed actual damages should be allowed, by way of exemplary damages, for the purpose of example or punishment of a party whose act did not directly inflict the injury if the injury is inflicted

through the negligence of an employee, in whose selection the utmost care has been taken by the employer to get skillful, temperate and prudent servants, and to whom all proper and necessary materials have been furnished for the work which they are engaged to do; for there may be gross negligence, or, rather, a high degree of negligence, in the servant, when there is, *in fact*, no negligence, or only slight negligence, in the master. What is here said is intended only to apply to the liability of a master for exemplary damages for the negligence of a servant, and in no manner to the liability of the master for actual damages done to another through the negligence of a servant; for whatever negligence of a servant, in the course of the business in which he is employed, and within the line of his duty, may occur, by which another party, not a co-servant, is injured, is, by law, imputed to the master, and he is liable in actual damages therefor, without reference to whether the master willed or participated in the act or not, and without reference to the actual negligence of the master.

The evidence in this cause tends to show a high degree of negligence in the servants of the appellant. Whether the same was known to any person of such general powers as to make him the representative of the company, and therefore notice to him notice to the company of the defective condition of its track, does not appear in the record; nor is it necessary in this cause for us to speculate upon the sufficiency of the evidence of bad condition of the track to authorize a holding that by the exercise of proper care the defects must have been known.

The elements for the estimation of actual damage are not now, by the great current of authority, as they once were, confined to to those things which can, with reasonable certainty, be measured by dollars and cents; but extend to compensation for not only physical, but also for mental pain and suffering, elements which formerly were made the basis for exemplary damages.

Actions for exemplary damages are *quasi*-criminal in character; yet, while for crime no man can be punished unless the penalty is fixed either absolutely, or by a minimum or maximum penalty, perscribed by law; still, in cases for exemplary damages there is no measure, save the discretion of the jury, except that which is found in the power of the court to set aside a verdict which appears to be the result of passion, prejudice, or some influence not found in the facts of the case.

4R

This is a delicate duty, but one which courts must exercise in all proper cases.

. Exemplary damages, when allowed, should bear proportion to the actual damages sustained.   (Mobile and Montgomery R. R. Co. v. Ashcraft, 48 Ala., 33.)

In this cause the actual damages assessed by the jury was $2000, a sum probably not excessive under the facts of the case; but the exemplary damages were assessed at $8000, which to us seems so clearly excessive, when contrasted with the sum found for actual damages, and considered with reference to the facts of the case, that we are forced to the conclusion that it was the result of passion or prejudice, stimulated, perhaps, by the course pursued on the trial.

It surely is not true that for purposes of punishing one for negligence by which an injury has been inflicted upon another, to his actual damage $2000, it is necessary or proper to inflict upon the offending party an additional penalty of $8000.   The court should have granted a new trial, upon the ground that the verdict was excessive.

There is no question made in this case as to the liability of the appellant for any actual damage sustained by the appellee by reason of the negligence of its servants in failing to keep its road in good repair.

The court instructed the jury, "If you further believe that it would have been possible for human foresight and skill to have provided against said accident and injuries, then you will find for the plaintiff such actual damages as the proof shows the plaintiff has sustained by reason of such injuries."

This is believed to state a higher degree of care than the law imposes upon a carrier of passengers, for there is no injury, unless the result of inevitable accident, which human foresight and skill might not possibly provide against.   Such a rule would require "every possible precaution which ingenuity might suggest, or the skill of science afford," and would be impracticable in the every day affairs of life.

The rule as to care required of passenger carriers is believed to be correctly stated in Railroad Company v. Halloran, 53 Texas, 53. The charge, as given, could not, however, have prejudiced the appellant upon the question of liability for actual damage, for such liability was admitted in the court below, and in this court.

It is not believed to be necessary to consider the several questions raised as to the giving and refusing of instructions, for many of the same questions have been considered and decided in other causes by this court since the cause was tried, and will not probably arise in another trial of the case.

For the errors indicated, the judgment of the court below is reversed and the cause remanded.