NELLIE O'CONNELL, by next friend, *vs.* THE CITY OF LEWISTON.

Androscoggin, 1875.—March 15, 1876.

*Way defective.   Lord's Day.*

. Every passing along a highway under c. 18, R. S., which constitutes traveling as there used and entitles the traveler to a remedy therein provided for an injury received, does not, if done on the Lord's day, necessarily constitute a traveling within c. 124.

A young lady, who on the Lord's day, walks one-fourth of a mile to her aunt's house, calls there and invites her cousin to walk, and then proceeds to walk with her three-fourths of a mile, simply for exercise in the open air, is not thereby traveling in violation of R. S., c. 124, § 20.

ON EXCEPTIONS AND MOTION.

CASE for an injury to the plaintiff's right hand and arm received on Bridge street, Lewiston.   The defect was a loose plank in the side-walk, one end of which would tip up when the opposite end was pressed down.   The plaintiff testified that on Sunday, March 22, 1874, in the afternoon before sunset, she went from her home to her aunt's house about one-fourth of a mile to get her cousin Nellie Nelligan, about the same age as herself (14), to go to walk with her; that she remained at her aunt's about fifteen minutes while her cousin was putting on her things to go with her, that they then went out to walk and walked down Bridge street and onward to the bridge across the river between Lewiston and Auburn and then went back home; that while they were going down Bridge street her cousin being in advance of her stepped upon the end of the loose plank farther from her and raised the end next to her so that she hit her toe against it and fell and received the injury named.   Distance walked after she fell to the bridge is about three fourths of a mile.

The defendants requested the presiding judge to instruct the jury that traveling on Sunday except from necessity or charity is prohibited by law ;. that the presumption of law is that traveling on the Lord's day is unlawful; that in order for a person to re-cover damages for an injury sustained while traveling on the Lord's day it is incumbent upon such person to satisfy the jury that the traveling was from necessity or charity ; that walking out

upon the street or sidewalk in company with an invited friend for the purpose of recreation, a walk or pleasure, is not an act of necessity or charity and is not authorized by law; and, that if the plaintiff was thus walking and received the injury complained of from the alleged defective sidewalk, she cannot recover from the city bound by law to keep the sidewalk in repair.

These instructions were refused; but the judge instructed the jury that traveling for the purpose of making a call or visit for pleasure would be unlawful; that a distinction was raised not very obvious but sustained by law; that while traveling for the purpose of making a visit to a friend merely for the purpose of spending the evening in company, was not lawful, traveling on Sunday for the purpose of exercise, gentle exercise in the open air, intending to make no call at any house, but, after taking the walk, returning home, would not be unlawful; that the distinction was, in one case the traveling was for visiting, and in the other, for no such purpose, but simply a walk in the open air without any object of pleasure.

There was no other evidence relating to the traveling or its purposes, or the cause of the injury. The plea was the general issue. The verdict was for the plaintiff for $1800.
The defendants excepted.

*M. T. Ludden,* city solicitor, for the defendants.

The statute provides, c. 124, § 20, that whoever on the Lord's day, travels, or does any work, labor, or business, shall be punished by a fine; and by § 22, the Lord's day includes the time between twelve o'clock Saturday night and twelve o'clock Sunday night. There is no doubt about the intention of the legislature. There are the plain, simple words of the statute, "travels, or does any work, labor or business." This word "travels," is not obscure, nor is it susceptible of a two fold interpretation.

It is only when a statute is ambiguous in its terms, that courts may rightfully exercise the power of controlling its language, so as to give effect to what they may suppose to have been the intention of the law-makers. *Wood* v. *Adams,* 35 N. H., 36.

A person traveling on the Lord's day, unless for charity or necessity, cannot maintain an action, for injuries by a defect of the

way.   *Cratty* v. *Bangor*, 57 Maine, 423.   *Hinckly* v. *Penobscot*, 42 Maine, 89.

No distinction is made between those who travel, in town, and those who travel from town to town.   The former are as much violators of the law as the latter.   *Tillock* v. *Webb*, 56 Maine, 100.

The statute makes no distinction between those who travel on foot and those who travel in carriages.   "It is the traveling which is prohibited."   *Cratty* v. *Bangor, ubi supra.*

The fact of traveling on the Lord's day as defined by our statutes, *prima facie,* makes a violation of the statute by which such traveling is prohibited.   The burden was on the plaintiff to show the act within the exceptions provided by the statute.

Against this view the plaintiff relies upon the case of *Hamilton* v. *Boston,* 14 · Allen, 475.   That case is no more an authority in this case than it was in *Cratty* v. *Bangor.*   In that case the plaintiff had been sick during the day, Sunday, of the accident, and being invited by a friend to walk, went for benefit to himself and for exercise.

In the case at bar the plaintiff was not sick, nor is there any testimony going to show what she went out to walk for, whether for health or pleasure.   If the purpose in *Hamilton* v. *Boston,* was lawful, this case discloses no such purpose.

If this plaintiff traveled on Sunday, she was performing an act prohibited by the statute.   If she did not travel, the defendants are not liable.

*L. H. Hutchinson* and *A. R. Savage,* for the plaintiff.

I. A person walking a short distance in a public highway, simply for exercise and to take the air, on the Lord's day, with no purpose of going to or stopping at any place but his own house, or of passing from one city or town to another, is not liable to punishment therefor under the statutes for the observance of the Lord's day; and may maintain an action to recover damages for an injury sustained by him while so walking, in consequence of a defect in the highway.   *Hamilton* v. *Boston,* 14 Allen, 475, and the authorites there cited.

This Massachusetts decision has been adopted by our own court.   *Cratty* v. *Bangor,* 57 Maine, 423.

II. The verdict was in accordance with the evidence and the law under the instructions of the presiding judge.

The court will not interfere and grant a new trial unless upon strong conviction that the jury have fallen into some error in regard to the nature and force of the evidence.   *Smith* v. *Richards,* 16 Maine, 200.

VIRGIN, J.   The decision of this case involves the interpretation of R. S., c. 18, §§ 40 and 65, defining the liability of towns for injuries received through their defective ways, viewed in connection with that of c. 124, § 20, prohibiting traveling on the Lord's day.

The first section mentioned requires towns to open and keep their ways "safe and convenient for travelers;" and there is no provision requiring ways to be kept thus for any persons other than "travelers."   This being the extent of the provision is the full measure of liability.   *Peck* v. *Ellsworth,* 36 Maine, 393.

Section 65 providing a remedy for "any person" injured "through any defect or want of repair" in any public way, relates to those only for whom ways are established, to wit, "travelers." *Stinson* v. *Gardiner,* 42 Maine, 248.   *Leslie* v. *Lewiston,* 62 Maine, 468.

In general terms, ways are established and constructed at the public expense for the accommodation of all persons who in performing the duties, or prosecuting the general pursuits of life whether of business or pleasure, have occasion to pass and repass along and upon them on foot, with horses and carriages, or with teams for the transportation of property.   And persons thus using a public way are "travelers" within this statute, and are entitled to the remedies therein provided.   When, however, they cease to use it for the substantial purposes for which it is established and appropriate it to uses foreign thereto, they can no longer claim to be "travelers" or be entitled to the remedies provided in behalf of "travelers."   This principle is illustrated by numerous familiar decisions which need not be cited here.

Can a person recover for an injury received through a defect in a way while traveling in violation of the Lord's day statute ?   This question has been repeatedly decided in the negative in this and

several other states, while other courts of acknowledged learning and ability have arrived at the opposite conclusion.

Was the plaintiff, at the time of receiving the injury complained of, traveling in violation of c. 124, § 20, which provides: "whoever, on the Lord's day, . . travels, or does any work, labor or business on that day, except works of necessity or charity, . . shall be punished by fine," &c. ?

It is evident that the answer depends to a great extent on the meaning which the legislature intended to give to the word "travels" in this statute. For if the idea of traveling is precisely the same in the two statutes—if the term "traveler" as used in both are synonymous, then the plaintiff was violating the penal statute when she was injured, and cannot recover therefor, unless she was within the excepting clause.

Although a particular word or phrase is generally used in one and the same sense as often as it occurs in the same chapter, the provisions of which pertain to the same general subject matter, it does not follow that it is to receive the same interpretation in a penal as in a remedial statute. That every passing along and upon a highway under c. 18 which constitutes traveling as there used and entitles the traveler to a remedy therefor provided for an injury received, does not, if done on Sunday, necessarily constitute a traveling within the provisions of c. 124, becomes evident, from various considerations.

In construing the statute of ways, the decisions have never recognized any distinction between walking from place to place in town, and walking or riding from town to town. But such a distinction is apparent in c. 124 as will be seen by comparing sections 20 and 21. Thus § 21 forbids any innholder or victualer, on the Lord's day, to suffer "any persons, except travelers, strangers or lodgers, to abide in his house," &c. If, however, every person who walks in the street from place to place in the town "travels," within § 20, he would also thereby become a "traveler" within § 21 and the phrase "except travelers" would become a nullity as all would be "travelers" who happened into the inn. That such was not the original intention of the legislature is rendered still more apparent by regarding the language of the statute of 1821, c. 9, § 3,

(from which § 21 of c. 124 was derived,) which forbade innhold-
ers and others there enumerated to "entertain any of the in-
habitants of the respective towns where they dwelt, or others not
being travelers," &c. This language would seem to make it cer-
tain that the citizens of a town, when visiting an inn and certain
other places of entertainment kept therein, were not considered
"travelers."

Moreover, the numerous provincial statutes on this subject en-
acted in Massachusetts, from time to time from its earliest times
down to 1791, not only contained provisions prohibiting traveling
strictly so called, but they also, by distinct and variously expressed
clauses, forbade under specific penalties, "unnecessary walking in
the streets, highways, fields," &c. But this last and all similar
provisions were omitted from the Mass. Stat. of 1791 and all suc-
ceeding statutes in that commonwealth. And "it is reasonable to
infer that the provisions against mere unnecessary walking in the
streets were intentionally omitted by the legislature, and for the
reason that they were an unwise and arbitrary interference with
the comfort and conduct of individuals." *Hamilton* v. *Boston*, 14
Allen, p. 481. Before the separation, the laws of Massachusetts
were our laws. After becoming a state, our earliest statute pro-
viding for the "due observation of the Lord's day" (Stat. 1821,
c. 9,) was substantially a transcript of that of 1791, c. 58, except as
to its penalties; and section one provided, "No traveler, drover,
wagoner, teamster, or any of their servants, shall travel on the
Lord's day, except from necessity or charity." The only substan-
tial difference between that and the present statute, is a substitu-
tion of "whoever" for the different classes specified in the other.
The effect of the change simply enlarges the number of persons to
whom the statute may apply, but it in nowise changes the act by
which they may incur the penalty, the word travel remaining.

Our conclusion is that a young lady, who, on the Lord's day,
walks one-fourth of a mile to her aunt's house and calls there and
invites her cousin to walk with her, and they then proceed to walk
three-fourths of a mile simply for exercise in the open air, is not
thereby traveling in violation of R. S., c. 124, § 20.

This decision has the authority of the court in Massachusetts

after a complete review and thorough analysis of the statutes. *Hamilton* v. *Boston*, 14 Allen, 475.

If the testimony is true, the verdict is not against the weight of evidence or against law.

> *Motion and exceptions overruled.*
> *Judgment on the verdict.*

APPLETON, C. J., WALTON, BARROWS and PETERS, JJ., concurred.