## FINK v. SLADE.

(Supreme Court, Appellate Division, Third Department. November 13, 1901.)

1. MASTER AND SERVANT—APPLIANCE—WHAT CONSTITUTES.

A platform along the inside of an ice house, consisting of movable sections raised or lowered by cables and drums, each section operated in front of a room in which ice is stored, the sections being capable of arrangement so as to render the platform as a whole an inclined plane, down a groove in the center of which ice blocks would move of their own weight, and on the edge of which platform laborers engaged in storing ice are stationed, constitutes an "appliance" with which such work is performed, and not a "place to work," within the rules governing a master's liability to his servants.

2. SAME—RES IPSA LOQUITUR—FELLOW SERVANT—RESPONSIBILITY FOR ACCIDENT.

Plaintiff was injured, while employed to store ice, by the unexplained fall of three sections of such platform. The platform had been in use two weeks. A few hours before the accident plaintiff's fellow servant had rearranged the platform, by hoisting one of the sections which fell. When the accident occurred there were from 8 to 11 men on the platform, and 35 or 40 cakes of ice, weighing 250 pounds each. *Held*, that the doctrine of res ipsa loquitur did not apply, as, while the circumstances may have shown negligence, there was nothing to suggest that it was the negligence of the master rather than that of fellow servants.

Appeal from trial term, Albany county.

Action by John H. Fink against Emmet F. Slade. From a judgment in favor of plaintiff entered on a verdict of a jury, and from an order denying defendant's motion for a new trial, defendant appeals. Reversed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, and SMITH, JJ.

Edward W. Douglas (Lewis E. Carr, of counsel), for appellant.

Countryman, Du Bois & Bevans (E. Countryman and P. E. Du Bois, of counsel), for respondent.

EDWARDS, J. This action was brought to recover damages for personal injuries sustained by the plaintiff by the alleged negligence of the defendant. At the time of the accident the plaintiff was in the employment of the defendant, engaged, with others, in filling defendant's ice house on the west side of the Mohawk river, above the Cohoes dam. Men had been so engaged for about two weeks before the accident. The ice was taken from the river, and was carried, by means of an incline plane or elevator, to the northwest corner of the house, where it was switched off upon a movable platform, from which it was distributed in the different rooms or compartments of the building. There were seven of these rooms, each 30 feet wide, running easterly from the platform to the other side of the building, and numbered from 1 to 7, beginning at the north end. The platform, 7 or 8 feet in width, was within the building, on the west side, and extended the length of the house from north to south. It consisted of 7 sections, each 30 feet in length, bolted or hooked together. Each section was supported by two wire cables attached to each, and extending upwards, and wound around a drum at the top of the building, there being a drum for each section. At the end of the drum was a wheel with cogs, and underneath, fitting into the cogs, was a screw with a wheel at the end, 18 inches in diameter, by the turning of which the cable on the drum was wound or unwound, and thereby the platform was raised or lowered, so as to adjust its position to the elevation of the ice in the rooms of the house. There was a space in this platform along which the cakes of ice ran or were pushed, outside of which were timbers to keep the ice in the center, and on the outside was a plank 12 inches wide, running the same way as the timbers, and on which the men stood. Until the rooms were nearly filled, the platform was so adjusted as to incline from north to south, so that the cakes of ice would of their own weight run along this space until they reached the rooms where they were to be placed, at the doors of which men were stationed to switch the cakes from the platform into those rooms; but when the rooms were nearly filled the platform was nearly level, and it was necessary for the men to pull or push the ice along until it reached the room which they were filling.

On January 23, 1899, and in the forenoon of the 24th, the platform was inclined, and the plaintiff was engaged in switching ice from it into the rooms, but at the time of the accident, on the 24th, the rooms

being nearly filled, the platform was level, and the plaintiff was assisting in poling or pushing the ice on the platform. At some time in the afternoon of the 24th, after room No. 4 was filled, Foley, a fellow laborer of the plaintiff, with another workman, raised the platform. He says he does not know which section it was,—whether it was room 4 or 3. He says they took hold of the wheel, and turned it, and as they turned it that wound up the wire cables on the drum. The plaintiff says this was just before dinner. The platform was then 30 or 32 feet above the floor of the ice house. At about half past 4 o'clock, while the plaintiff was on the platform between sections 4 and 5, suddenly, and for some unexplained reason, sections 3, 4, and 5 of the platform fell, and the plaintiff was precipitated to the ground. About two minutes before the accident the elevator had been stopped because the ice was coming too fast for the men in the rooms to handle. There were on the platform 8 or 10 men, and from 35 to 40 cakes of ice, each weighing 250 pounds.

The foregoing are all the facts and circumstances, except those relating to the extent of the injury attendant on the accident shown on the trial. The plaintiff offered no evidence of any specific negligence by the defendant, but rested his case on the proposition that these facts created a sufficient presumption of negligence for submission to the jury. The defendant introduced no evidence. The trial court, in denying the motion for a nonsuit, held the plaintiff's proposition to be correct, and the jury returned a verdict for the plaintiff. The question, therefore, presented for our consideration, is whether there was sufficient evidence of the defendant's negligence to justify the submission of the case to the jury.

The relation between the parties was that of master and servant, and the duty which the defendant owed to the plaintiff was to use reasonable care to provide safe and suitable machinery and appliances, competent fellow servants, and a safe place to do the work assigned to him. Negligence is never presumed, but the burden of proving it is on him who alleges it. It was incumbent on the plaintiff to establish facts from which it might reasonably be inferred that the defendant was guilty of a violation of some duty which he owed to the plaintiff as a servant. These principles have been so long and so well settled as not to require any citation of authorities, and I do not understand that they are here questioned. It was necessary, therefore, under the circumstances of this case, for the plaintiff to show either that the defendant has not furnished to him reasonably safe machinery, appliances, and instrumentalities for doing the work in which he was engaged, or competent fellow servants. I do not think the question of a safe place is involved, as the platform was not a "place," in the legal sense of that word. It was rather a part of the appliance or instrumentality whereby the work was to be done. It was so arranged that it could be raised or lowered by the servants, whose duty it was, so as to accommodate it to the elevation of the ice in the building, and the several sections could be raised or lowered so as to give the platform such an inclination that the ice brought to it by the elevator could slide of its own weight through the groove or space made in the center for that purpose to the different rooms

in which the ice was to be placed. The work to be done was the taking of the cakes of ice from the river, and placing them in the different rooms of the building, and the platform was as essential for that purpose as was the elevator. As an instrumentality for doing the work, it was indispensable, and, taken in connection with the elevator, it constituted the machinery or appliance whereby the work of filling the house with ice was to be accomplished. It is true that the plaintiff and the other workmen in the use of the platform stood on the outer sides of it, but this fact did not change the character of the appliance. As was said by the court in Butler v. Townsend, 126 N. Y. 110, 26 N. E. 1019: "In one sense, the place of an engineer's work is on his locomotive, but a defect in that is a defect in the machine which the master has supplied, and not in the place of labor which he has furnished." This applies to all the employés engaged in running a railway train. Their place is on the train, but, if the train is thrown from the track by reason of a defect in the cars, that defect, and not the want of a safe place to work, is the ground of the master's liability.

There is no evidence in this case showing what was the cause of the fall of the platform,—whether it was by reason of any structural defect, or of any negligence in its adjustment or in the manner of its use. The theory of the action, and the only one on which it can be supported, is the personal negligence of the defendant, and there must appear facts and circumstances from which such negligence can be inferred. There must be some evidence from which it can be inferred that the injury sustained is attributable to some neglect of duty which the master owed to the servant. Under the principles of law stated, it cannot be questioned, and I do not understand that it is, that there was insufficient evidence to support a finding of the personal negligence of the defendant, except by an application to the facts of this case of what is known as the rule of "res ipsa loquitur." That rule, as expounded by the court of appeals in its latest utterance on the subject, in Griffen v. Manice, 166 N. Y. 188, 59 N. E. 925, 52 L. R. A. 922, relates simply to the probative force of evidence. It does not dispense with the necessity of evidence of the defendant's negligence in any case, but, on the contrary, expressly requires it. In its application in those cases where "the accident is such as, in the ordinary course of business, does not happen if reasonable care is used," the effect of the rule is that evidence of the attendant circumstances is sufficient for an inference of negligence, without proof of any specific negligent act. But the attendant circumstances shown must be such as will warrant an inference, not of negligence only, but of the defendant's negligence,—an inference that the injury is attributable to some violation of the defendant's duty. The learned judge who wrote the opinion in Griffen v. Manice, supra, in explaining the meaning and application of res ipsa loquitur, quotes approvingly section 59 of Shearman and Redfield on Negligence, as follows:

"It is not that, in any case, negligence can be assumed from the mere fact of an accident and an injury; but in these cases the surrounding circumstances, which are necessarily brought into view by showing how the

accident occurred, contain, without further proof, sufficient evidence of the defendant's duty and of his neglect to perform it. The fact of the casualty and the attendant circumstances may themselves furnish all the proof of negligence that the injured person is able to offer, or that it is necessary to offer."

The judge in his opinion also quotes approvingly Benedick v. Potts, 88 Md. 52, 40 Atl. 1067, 41 L. R. A. 478, as follows:

"In no instance can the bare fact that an injury has happened, of itself and divorced from all the surrounding circumstances, justify the inference that the injury was caused by negligence. It is true that direct proof of negligence is not necessary. Like any other fact, negligence may be established by the proof of circumstances from which its existence may be inferred. * * * This phrase [res ipsa loquitur], which, literally translated, means that 'the thing speaks for itself,' is merely a short way of showing that the circumstances attendant upon an accident are themselves of such a character as to justify a jury in inferring negligence as the cause of that accident."

The court says:

"The 'res,' therefore, includes the attending circumstances, and, so defined, the application of the rule presents principally the question of the sufficiency of circumstantial evidence to establish, or to justify the jury in inferring, the existence of the traversable or principal fact in issue,—the defendant's negligence."

It further says:

"But the question in every case is the same, whether the circumstances surrounding the occurrence are such as to justify the jury in inferring the fact in issue."

"The fact in issue" is not negligence, but the defendant's negligence,—a violation of some duty owing by him to which the injury is attributable. When the defendant alone is liable for any negligence which may have occurred, the rule is satisfied by evidence of any facts or circumstances from which negligence may be inferred; but, where the injury may have resulted from the negligence of a fellow servant, there must be some evidence that the injury is a consequence of a violation of some duty of the master. There is no presumption in such cases that the negligence is that of the master rather than the servant, and the law will not visit on the master the consequences of the servant's neglect of duty. In brief, the rule of res ipsa loquitur can have no application, in the absence of any evidence that it was the defendant's negligence which caused the injury sustained. As is said in Shearman and Redfield on Negligence, in the section quoted in Griffen v. Manice, supra, the surrounding circumstances must contain "sufficient evidence of the defendant's duty and of his neglect to perform it." The distinction which obtains in the application of res ipsa loquitur between those cases where the defendant alone is responsible for any existing negligence and those where the injury may have been caused by the negligence of a fellow servant may be illustrated by the illustration used by the learned judge who wrote the opinion in Griffen v. Manice, supra. He says:

"I think a single illustration will show the correctness of the view of the learned authors, that it is not the injury, but the manner and circumstances of the injury, that justify the application of the maxim and the inference of negligence. If a passenger in a car is injured by striking the seat in front of him, that, of itself, authorizes no inference of negligence. If it be shown,

however, that he was precipitated against the seat by reason of the train coming in collision with another train or in consequence of the car being derailed, the presumption of negligence arises."

In that case whether the negligence is a defect in the roadbed, or in the cars, or in the operation of the train, it is the negligence of the defendant alone, and hence any negligence inferable from the circumstances is the negligence of the defendant. But if for the passenger in the car there be substituted one of the employés in the operation of the train, who has received, under the same circumstances, the same injury, and brings an action to recover therefor, it could not be said that the proof is sufficient to show the defendant's negligence. In the case of the passenger, there is some evidence that the injury was caused by a violation of the defendant's duty; in the case of the employé, there is no such evidence. In Breen v. Railroad Co., 109 N. Y. 297, 16 N. E. 60, 4 Am. St. Rep. 450, cited by the court in Griffen v. Manice, supra, on the question of res ipsa loquitur, the plaintiff was a passenger, and proof of attending circumstances showing negligence was proof of the negligence of defendant, as it alone was liable for any negligence, whether of an employé or otherwise, producing the injury. So, also, in the case of Peck v. Railroad Co., 165 N. Y. 347, 59 N. E. 206, cited in the Griffen v. Manice Case, the action was to recover the value of a warehouse of the plaintiff destroyed by fire caused by sparks emitted by the defendant's engine, and the negligence inferable from the circumstances was necessarily the negligence of the defendant.

A discussion of the many authorities cited by the learned counsel for the respondent in this case would be unprofitable. A rule that a servant can maintain an action for personal injuries against a master simply by showing attending circumstances from which the negligence of some one may be inferred, without showing, either expressly or inferentially, the personal negligence of the master,—some violation of his duty to the servant,—would be subversive of well-settled principles.

If my conclusion is correct, the trial court erred in submitting the case to the jury, and also in his charge, which was excepted to by the defendant, in the following language:

"If you find—and it is the first thing for you to consider in this case—whether that structure hanging there, as I have stated, 25 to 30 feet from the floor, in the manner that I have stated, is a structure that would have fallen in the manner that it did fall if reasonable care had been used, and if you find that it would not have fallen unless there was negligence,—the want of reasonable care,—you have a right to find in this case that Mr. Slade (the defendant) was negligent just the same as you would find if they had specified in detail what the negligence consisted of. I do not want any misunderstanding in regard to the rules I am stating. It is first for you to find whether that would have fallen under the circumstances if reasonable care had been exercised, and, if you find that it would not have fallen if reasonable care had been exercised, then you may assume and presume that the defendant, the person charged with the duty of reasonable care in this case, was negligent, and find a verdict in this case in favor of the plaintiff, and against the defendant."

The court not only instructed the jury that from the circumstances of the accident they might presume negligence, but might also

charge the defendant with the consequences of any negligence, although it might be that of a fellow servant of the plaintiff. That there may have been causes for the fall of the platform other than the negligence of the defendant is disclosed in the evidence. The raising and lowering of the platform to accommodate it to the elevation of the ice in the rooms, or the raising or lowering of certain sections of it, so as to produce a proper inclination for the sliding of the ice, and the loading of it with ice, was detail work of the servant, and for any negligence in such work producing the injury the defendant was not liable. What, if any, were the means employed for securing the screws underneath the drums, or the drums on which the cables were wound or unwound, in raising or lowering the platform or certain sections of it, does not appear, nor does it particularly appear how that work was done by the plaintiff's fellow servant Foley and another employé on the afternoon of and before the fall of a part of the platform. This platform had been used successfully for at least two weeks for the same purpose for which it was then being used, and it appears that the section which was wound up by the fellow servants was one of those that fell after the operation. So, too, the falling may have occurred through the accumulation of too large a quantity of ice on the platform. It is true that there is no evidence that this detail work of the servants caused the fall of the platform. It is equally true that there is no evidence that any defect in the platform was the cause of its fall, and the difficulty is that it was left to the jury to speculate as to the cause of the accident, and whatever it may have been, whether imputable to the defendant or not, to charge him with its consequences. The accident may have resulted from causes other than defects in the platform, for which the defendant was not liable, and, in the absence of any evidence of which the producing cause was, the defendant should have prevailed on his motion for a nonsuit. Rose v. Railroad Co., 58 N. Y. 217; Dobbins v. Brown, 119 N. Y. 188, 23 N. E. 537; Ruppert v. Railroad Co., 154 N. Y. 90, 47 N. E. 971.

The judgment and order should be reversed, with costs, and a new trial granted. All concur.