[Civ. No. 2570.   Second Appellate District.—September 19, 1918.]

ELIZABETH SANDER, Respondent, v. LOS ANGELES RAILWAY CORPORATION (a Corporation), Appellant.

NEGLIGENCE — RAILWAYS — INJURY TO PASSENGER — DANGEROUS CONTRIVANCE—PRESUMPTION.—In an action for damages for injuries sustained by a passenger on a railway, proof that the plaintiff, while making her exit from the car, was thrown to the street through her skirt catching on a contrivance attached to the car by the defendants as a bumper for a sliding gate at the exit, entitled her to the benefit of the presumption of negligence on the part of the defendant until the defendant should excuse itself by evidence.

ID.—PREVIOUS USE WITHOUT ACCIDENT—EVIDENCE.—Evidence in such action, that the appliance had been in use during the whole year in which the accident occurred, during which time many millions of passengers had been carried, and that the claim agent of the defendant had never received a report of any accident from the appliance other than that sustained by the plaintiff, could not establish the fact that the defendant was not negligent, especially as such evidence does not negative the possibility that a great many skirts of women passengers might have been caught on the appliance

without complaint having been made; and, no showing having been made that all such occurrences were required to be reported, an appellate court cannot assume such to have been the rule.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Charles Wellborn, Judge.

The facts are stated in the opinion of the court.

Gibson, Dunn & Crutcher and Norman S. Sterry, for Appellant.

Park & Park and Theodore Park, for Respondent.

JAMES, J.—Defendant appeals from a judgment entered in favor of plaintiff and from an order denying its motion for a new trial.

The action was to recover damages alleged to have been suffered by the plaintiff through the negligence of the defendant. Defendant was a common carrier of passengers, and plaintiff was a passenger on one of its electric cars in the city of Los Angeles when she suffered her alleged injuries. The car upon which plaintiff was riding was at a standstill, having stopped to permit the discharge of passengers. Plaintiff was preceded from the car by her husband. As she reached the exit space opposite the steps (there being two of the latter) she had a package in her right hand and took hold of the hand-guard with her left. As she stepped downward upon the steps her skirt was caught on a protruding knob affixed near the floor at the left of the exit, and she was thrown to the street, where she struck upon her back. In her complaint the negligence charged against the defendant was that the knob was negligently placed in its position by the defendant, and so placed as to constitute a dangerous contrivance. The case was tried before the court sitting without a jury, and by the decision of the trial judge the sum of two thousand five hundred dollars was awarded to the plaintiff. On this appeal the defendant makes no contention against the amount of damages awarded or the extent of plaintiff's injuries. The sole contention is that no negligence whatsoever was shown by reason of which the defendant was

chargeable for any amount of damages. The knob upon which plaintiff's skirt caught was a small contrivance which served as, a bumper to intercept the sliding iron gate which closed the exit of the car. There were two of these bumpers, the one about which complaint is made being located four inches from the floor of the car, and the other near the top of the door, about six feet from the floor. There being no dispute. in the evidence as to the location of the bumper, or the manner of construction of the car at the place of exit, we may use for purposes of illustration two drawings attached to appellant's brief which it is agreed are correct:

### No. 1.

Handle Bar

Door Post

Bumper

. Drawing No. 1 is a view from the interior of the front platform showing the exit door open; also the bumper near the

floor, attached to the door-post.  No. 2 gives a view of the steps of the car looking downward immediately over the same.

## No. 2.

**Door Post**

A duplicate of the contrivance, which is termed a "bumper," was submitted under stipulation in this court by the parties and we have it before us for examination.  This bumper consists of an iron plate about two and three-quarters inches long by one and one-half inches wide, with an ell piece which is made to fit on the inside of the door-post.  According to the testimony, this ell piece was set into the door-post so that the piece was flush with the post on that side.  A round iron projection extends above the plate to a height of about an inch and a half, and into this is set a solid rubber piece, cylindrical in shape, designed to receive the jar of the door when closed. This projection above the plate answers in general description to a section of one and one-half inch pipe closed on one side and holding the rubber on the other, except that on the opposite side to that holding the rubber, and extending halfway up on the projection, is an iron brace, all a part of the casting. The casting is rough in kind and painted.  The testimony introduced on behalf of the plaintiff to show the circumstances of the accident went only to the extent of describing the facts as we have first stated them, not presenting any description of the bumper itself or the way it was applied. Defendant, at the conclusion of his testimony, moved for a judgment of nonsuit, which motion was denied.  Thereupon

defendant introduced as a witness its master mechanic. He testified that it was his business to design all attachments for the cars of his employer and that he had done this for about twelve years. He explained the method of construction of the car platform and bumper, and said: "I consider that one of the most practical buffers that I could possibly adopt for that. I designed that car, and in studying that out, I had to have something to bump against, and the idea of putting it in that position as that was, throwing it out, in order that when they went to get past between the post and the buffer, the buffer was to keep it back far enough, so that you couldn't get your fingers between the sliding gate and the post, and is the reason why the buffer was placed back beyond the face of the post, so as to get room enough, so if anybody getting out of the car, or were getting in the car while the door was in action it couldn't pinch their fingers, and that is the reason why it is constructed in that manner. A further reason for placing the buffer out of the passageway, making the exit from there, was that we couldn't put one at the top and one at the bottom on account of throwing the gates out of square. It was necessary to put it in that position in order to have sufficient strength to support it. This buffer comes up even with the left-hand post as you get out of the car. I have been engaged in the railway business for about thirty-five years, I spent about a year and a half designing these cars before they were actually put in operation. We tried other buffers as experiments, but this buffer proved to be the most satisfactory that we have ever gotten out. This buffer is a modification of the original buffer that was put on." On cross-examination the witness was asked various questions tending to elicit information as to whether the buffer casting could not have been extended all the way back to the front wall of the car (a distance of from twelve to fourteen inches), and he gave his view that it would not be practicable to do so. On further examination he stated that it could be so constructed, although he did not think it would be any better that way, saying: "I don't think it would be impossible for a woman's garment to catch upon it if it were extended back to the end of the car. Her dress is as liable to be caught in underneath because we can't cover the whole distance from the floor of the car to the bumper." Asked whether any shields had ever been placed over the bumpers, he replied,

"No, sir." The general claim agent of defendant company testified as follows: "My duty regarding claims and injuries is to investigate all reports received, and to investigate all injuries, and as to how they occur. That has been my position with the defendant for twenty-three years. As claim agent of the railroad I have a report of the number of passengers carried by the cars of the company." He then stated that during the year 1913 (it being alleged that the accident in question occurred on the fourth day of September, 1913), there had been carried on cars having the bumper attachments 88,236,273 passengers. He stated that as claim agent of the defendant he did not during the year 1913 receive any report or claim for injury other than the claim of the plaintiff arising out of an accident caused by the bumper, and further stated: "The claim department watches all equipment on cars. If there is any complaint of anything dangerous, we notify the operating department; and during that time all these millions of people carried, there has never been a question come up about any question on the cars. We have never received any report of any accident other than the one the plaintiff here received from this bumper or buffer." Another witness, the assistant superintendent of the defendant, testified that he regarded the bumper as a safe appliance, but the appellant in its brief suggests that possibly this witness was not sufficiently qualified to give that opinion.

Appellant first argues that the judgment of nonsuit should have been granted because there was no proof made by the plaintiff tending to show that the defendant had in any way been negligent. Appellant, under the facts adduced by the plaintiff, denies the application of the doctrine of *res ipsa loquitur*. It is true enough that negligence will not be implied from the mere fact of injury, and it is also true that the plaintiff, at the time she rested her case, had furnished the trial court with no information as to the construction of the bumper, its character, or location upon the car. She did, however, show that she was injured through the catching of her skirt upon an appliance affixed to the car by the defendant, and we are inclined to the view that enough was supplied, under the rule adverted to as affecting carriers of passengers, to entitle her to the presumption of negligence until the defendant had excused itself by evidence. In *Steele* v. *Pacific Electric Ry. Co.*, 168 Cal. 375, [143 Pac. 718], the

court states that before negligence will be implied, "it must first be shown that the injury came from the movement of the car by those in charge of it, *or from something connected therewith, or in control of the defendant.*" She did show that her skirt caught upon the bumper and that the bumper was an appliance connected with the car. The rule adverted to is further defined in *Fink* v. *Slade,* 66 App. Div. 105, [72 N. Y. Supp. 824], as follows: "The doctrine relates simply to the probative force of the evidence. It does not dispense with the necessity of evidence of the defendant's negligence in any case, but on the contrary, expressly requires it. Attendant circumstances must be such as will warrant an inference, not of negligence only, but of the defendant's negligence. It is not that, in any case, negligence can be assumed from the mere fact of accident and injury; but in these cases the surrounding circumstances, which are necessarily brought into view by showing how the accident occurred, contain, without further proof, sufficient evidence of the defendant's duty and of his neglect to perform it." We think, however, that it becomes immaterial for consideration here as to whether the trial judge erred in denying the motion for judgment of nonsuit. The defendant was not content to rest upon the plaintiff's testimony and its motion for such a judgment, but introduced independent evidence showing fully the description of the bumper, the method of attachment thereof, and the general construction of the car in the part concerned in the accident; in other words, the defendant supplemented the proof made by the plaintiff by showing more fully the attendant conditions. It therefore becomes a question as to whether upon the whole evidence the court was justified in concluding that defendant had failed to use that degree of care toward its passenger which the law requires of it. Counsel for appellant, upon this general question, contend that where the evidence fails to show that an appliance is improperly placed or attached, and it has been used for a long period of time without causing an accident, any suggestion of negligence is repelled and it must be concluded that the carrier has done its full duty. In support of this contention, *Morris* v. *Southern Pacific Co.,* 168 Cal. 490, [143 Pac. 708], is cited. This case is cited particularly because it quotes approvingly from *Holt* v. *Southwest Missouri Electric Ry. Co.,* 84 Mo. App. 443, this declaration: "A carrier of passengers is not obliged to

proceed to provide against casualties which have not been known to occur before and which may not reasonably be anticipated. That which never happened before and which in its character is such as not naturally to occur to prudent men to guard against its happening at all, cannot, when, in the course of years, it does happen, furnish good grounds for charge of negligence in not foreseeing its happening and guarding against that remote contingency." *Morris* v. *Southern Pacific Co., supra,* was a case entirely different in its facts from this and referred to an accident occurring by the undermining of the roadbed of defendant by "unprecedented" high water. The Missouri case was one where the passenger boarding a car was struck by the revolving handle of the brake, which had been set loose by the dislodging of a dog set in a ratchet. The brake handle was caused to revolve through the accidental releasing of the dog, either by the foot of the passenger boarding the car or the jarring of the brake by the passenger, or a jar caused by some other person, the platform being crowded at the time. The Missouri court held that as a matter of law no negligence was shown against the defendant, although it announced in its decision that the conclusion was not reached "without difficulty." There is an Illinois case in which the court, under very similar facts, held that it was a question for the jury to decide as to whether negligence had been shown. (*Cleveland etc. Ry. Co.* v. *McHenry,* 47 Ill. App. 301.) The question as to whether negligence or the want of it has been shown in a particular case is generally a matter of fact to be determined by the trial court or jury. In *Seller* v. *Market Street Ry. Co.,* 139 Cal. 268, [72 Pac. 1006], the court said: "It has often been said by this court that it is very rare that a set of circumstances is presented which enables a court to say, as a matter of law, that negligence has been shown. As a general rule, it is a question of fact for the jury, an inference to be deduced from the circumstances of each particular case, and it is only where the deduction to be drawn is inevitably that of negligence that the court is authorized to withdraw the question from the jury. This is true even where there is no conflict in the evidence, if different conclusions upon the subject can be rationally drawn therefrom. If the conceded facts are such that reasonable minds might differ upon the question as to

whether or not one was negligent, the question is one of fact for the jury. These rules are so well settled as to render it unnecessary to here do more than state them.'' In reviewing the evidence in this case, we are of opinion that to declare as a matter of law that no negligence was shown, would be to trespass upon the province of the trial judge and substitute our judgment for his as to the matter of fact upon which there might be different conclusions. So far as the evidence shows, the appliance complained of had only been used during the year 1913. It might be well concluded from the position in which it was placed and the character of its construction, that a woman's skirt, if it chanced to fall against it as the passenger lowered herself to reach the steps, would catch and hold upon the corners of it. It would be reasonable to conclude, also, that by some very inexpensive means the sharp corners of the bumper could be shielded so that clothing could not catch upon them. If these deductions are allowable, then it must very clearly appear that the high degree of care required of passenger carriers had not been observed, and that negligence was, therefore, shown. Hence the judgment could not here be set aside, unless it may be said that the showing made by defendant as to the nonhappening of accidents while many millions of passengers had been carried was a complete answer to the charge. The particular evidence introduced to this point was general, and showed only that the claim agent had received no report of accidents due to that cause or claims for damages. This showing does not negative the possibility that a great many skirts of women passengers may have caught upon the bumpers and no complaint made because of the fact. There was no showing that all such occurrences were required to be reported by the operatives of the cars, and we cannot assume that such was the rule. But, aside from all of this, and assuming for the moment that the evidence was complete upon that point, we do not think that under the particular facts here shown the answer of the defendant would cover the case made out by the plaintiff. If such were true, then that defense would be a perfect one, however dangerous the appliance causing an injury to a passenger might appear to be, as shown by the independent evidence. Different judges sitting at the trial might conclude differently upon those facts, as might also different

juries; but having once made a determination the appellate courts are without power to declare a different judgment.

For the reasons given, the judgment and order are affirmed.

Conrey, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 19, 1918.