THE INTERNATIONAL AND GREAT NORTHERN RAILROAD CO. *v.* JAMES HALLOREN.

[Case No. 1059.]

1. NEGLIGENCE—RAILWAY COMPANY.—See statement and opinion for facts on which a charge to the jury, that the liability of a railway company to a passenger injured by an accident, caused by a defective road-bed, depended upon "the manner and speed of running the train, considering the condition of the track and the state of the weather, if that in any way superinduced the accident," was held error.

2. COMMON CARRIER—RAILWAY COMPANY.—A railway company is

bound to exercise that high degree of care and skill which cautious persons would use in the construction, by competent engineers and workmen, of the road-bed, track, engines, cars, and all appliances to carry on the business of the road and operate its trains; to make frequent careful examinations of the same, in order to avoid accidents as far as human skill could reasonably secure such a result, and also to procure a sufficient number of good, steady, and competent agents and employees to so conduct and control its trains as to insure careful and skillful management.

3. SAME—NEGLIGENCE.—If the company be negligent in any of the above particulars, and its negligence is the legal cause of injury to the passenger, it is liable in damages.

4. RAILWAY COMPANY—DAMAGES.—Railway companies are not insurers of the safety of their passengers, further than could be required by the exercise of such a high degree of foresight as to possible dangers, and such a high degree of prudence in guarding against them as would be used by very cautious, prudent, and competent persons under like circumstances. The use of every possible precaution is not the rule, but they must adopt such of known value as are sanctioned by experience, and secure such skilled labor as they can reasonably procure.

5. RAILWAY COMPANY—NEGLIGENCE.—A railway company is required to so construct its road-bed and track as to avoid those dangers which it could be reasonably foreseen by competent and skillful engineers might result from the ordinary rain-fall and freshets peculiar to the particular section of country in which it is constructed.

6. SAME.—A railway company is not liable in damages for culpable negligence, where the injury results from the failure of the company to provide in the construction of its road-bed against extraordinary floods unknown to common experience, and which could not have been reasonably anticipated in the construction of the road.

APPEAL from Harris. Tried below before the Hon. James Masterson.

Suit by James Halloren, appellee, to recover damages from the International and Great Northern Railroad Company, appellant, for injuries received by him while a passenger on its railroad between Palestine and Crocket. He alleged that a portion of the train was thrown from the track; that he was injured thereby, and that this resulted from "the gross negligence, carelessness, and mismanagement of the company's agents and employees, and by reason of the unsafe and dangerous condition of the road."

The evidence of the plaintiff seemed to establish conclusively that the injuries sustained by him, while a passenger on defendant's road, were of a serious character, such as would disable him for life, leaving him incapable of earning a livelihood for himself, and yet would not shorten his existence.

The company pleaded—

1st. The plea of "not guilty" by general denial.

2d. That appellee was not injured by appellant's train, but the ills of which he complains were results of disease and sickness.

3d. If injured by appellant's train, the injury was the result of an unavoidable and unforeseen accident incident to railway travel, and which could not be foreseen or provided against by human foresight and skill. This plea then avers that appellant's road at the point of the accident was properly constructed by experienced workmen, and was maintained by the most approved means for that purpose; that it was in safe condition at the time of the accident, as far as human foresight could determine; that its train was in good and safe condition, and properly manned with experienced and competent employees; that the accident was caused by a sudden and unprecedented rain-fall at the place of the accident, which caused the water to collect in a larger body than had before been known, and which so softened the embankment at the place of accident that it gave way under the train and caused the accident complained of. Verdict and judgment for appellee for $6,000.

The company proved that the place at which the accident occurred was on high land not subject to overflow or inundation, and on the side of a hill; that it occurred on an embankment one hundred and fifty feet long and three and a half feet above the average bottom of the little pond formed by the embankment; that the surface water at this point had no opportunity to collect, because there was a ditch capable of carrying off an area of seven feet of water to a culvert which took the water to the other side of the road and thence down the hill; that the head of the ditch was only two and a half feet

above the lowest point in the pond or place where the water collected, and after the accident occurred the embankment remaining showed that the water had not been nearer the top of the embankment than a foot and a half; that the place at which it collected and caused the accident was not capable of holding over one thousand barrels of water. The accident was caused by a heavy flow of water down the hill, which penetrated through the base of the embankment and so softened and undermined it, that when the weight of the engine came over the spot the embankment gave way under the train. The cars were examined at Palestine by the inspector at 9 o'clock that night, and all were in good order and condition. The engine and train were in good condition, using air brakes, and had all necessary brakemen. The train left Palestine at 9 o'clock, and the accident occurred at 10. The schedule time was twenty-two miles an hour, but at the time of the occurrence was running only thirteen to fourteen miles an hour. The engineer was a first-class one. He had the head-light burning, and could see the track as well as in daylight, and when approaching the place at which the accident occurred the track had its usual appearance to an engineer who had been running over it every third day since it was built, in the fall of 1872. If the track had been washed out before his arrival, the engineer could and would have seen it; but when the engine was passing over the spot that gave way, he felt the engine sinking and applied the brakes. The engine, tender, and two baggage cars passed over safely; but the second-class passenger car sank in and leaned over, and this and the first-class coach and sleeper were thrown off the track.

After the accident, it was discovered that the embankment had washed or slided out about the length of a rail, or a rail and a half; the rails were all connected, no place broken, and the ties were hanging to the rails. The ties and rails were all comparatively new and sound, and the accident could not have occurred from any defect in either the ties or the rails. That part of the road was built in the fall of 1872. The engineer

of construction had the reputation of a first-class man in his profession; the contractors for the construction were men of high reputation for skill and integrity in their business, and the road was built first-class. It was maintained by a sufficient number of men to keep it in good repair, and they were competent and did their duty. At the place of the accident, and up to the time it occurred, the road was in first-class condition as to safety for passenger travel, and the speed at which the train was running was a safe speed at any time on that road. No accident had occurred at that point before this one, and none since. On the day the accident occurred it had been raining at Palestine, the headquarters of appellant, but not in such quantity as to indicate at that point any danger in running trains. But late in the evening, as shown by witnesses who lived in the immediate vicinity of the place of the accident, there fell the hardest rain at and about the locality of the accident which any of the witnesses had ever seen in that part of the country. About one hundred and twenty-five minutes before the accident occurred, defendant's north-bound passenger train passed over the place of accident, and the track was then in good condition. After this, and before the accident occurred, the section boss in charge of that section of the road for the purpose of watching the track and keeping it in good repair and condition, passed over the place of accident for the purpose of ascertaining whether the track had been injured in any way by the extraordinary rain. He found the track intact—in good and safe condition as far as he could ascertain; and within half an hour afterwards the south-bound train came along and met with the disaster complained of. The witnesses who testified to the rain-fall being unprecedented show that the rain of which they speak fell late in the evening, and that it was not a general rain.

*Baker & Botts,* for appellant.

I. So much of the charge of the court as made the appellant's liability depend on the "manner and speed of running

the train," and in this particular involved a question of negligence in appellant which was not raised either by the pleadings or proof, was error, when considered in connection with the facts. (2 Greenl. Ev., 222; Angell on Carriers, sec. 569; Story's Comm. on Bailments, sec. 601a; Saunders on Neg., p. 34; Shear. & Red. on Neg., sec. 270; Whart. on Neg., secs. 114, 115, 129, 558, 559; Stokes *v.* Saltonstall, 13 Peters, 181; Bowen *v.* New York Central, 18 N. Y., 408; Hampton *v.* Dean, 4 Tex., 455; Norvell *v.* Phillips, 46 Tex., 162; Cravens *v.* Wilson, 48 Tex., 324.)

II. There was nothing in plaintiff's pleadings to justify the charge as to the manner and speed of the train, nor was there in the testimony. (Shear. & Red. on Neg., sec. 478; Warner *v.* New York Central, 44 N. Y., 466.)

*W. B. Hamblin,* for appellee.

I. The charge of the court was applicable to the facts, and is correct.

II. The proof sustains the verdict, and the court should not disturb the judgment.

BONNER, ASSOCIATE JUSTICE.—The first and second errors assigned in this case bring into review so much of the general charge of the court as, in effect, instructed the jury that the liability of the defendant-company depended upon "the manner and speed of running the train, considering the condition of the track and the state of the weather, if that in any way superinduced the accident."

The ground of complaint against the company, as alleged in the petition, was, that "the gross negligence, carelessness, and mismanagement of its agents and employees, and the unsafe and dangerous condition of its road, caused the car in which plaintiff was riding to be thrown from the track and upset; whereupon and by reason of said gross negligence, carelessness, and mismanagement of defendant, by its agents and employees as aforesaid, and the unsafe and dangerous condi-

tion of its road, and the throwing off the car in which plaintiff was riding, from the track, and upsetting the same, plaintiff received great personal injury," &c.

There was no special demurrer to the petition that it did not allege the particular acts of gross negligence, carelessness, and mismanagement upon the part of the agents and employees of the company; and, under the pleadings, had the evidence warranted the charge as given, the subject-matter of it was proper for the consideration of the jury.

The testimony showed that, about three or four hours before the accident happened, an unprecedentedly heavy fall of rain occurred in that immediate locality, but that it had not been sufficient upon the line of the road—even on that part of it—to stop or impede the regular running of the trains, and it does not show that the agents and employees in charge of this particular train, either from information or their personal observation, had notice of the character of the rain-fall in that locality, or of the damage to the road-bed; but, on the contrary, it appears that, to all external appearance, the road-bed and track were sound and in good order; that the train at the time was running at but little over half-speed, not by reason of any apprehended danger, but to prevent passing a place at which it was intended to take on wood.

. The charge was calculated to mislead the jury by making the liability of the defendant turn upon the dangerous condition of the track and the state of the weather, without submitting, in this connection, the question of the knowledge of this condition on the part of those in charge of the train. The testimony having shown that the road-bed and track were in good condition until affected by this sudden heavy rain-fall, the knowledge of this changed condition by those in charge of the train was a material ingredient in the alleged negligence, and, as such, should have been submitted to the jury. (Withers v. North Kent Railway Co., 3 Hurl. & N., Am. ed., p. 969.)

. The third and fourth errors assigned involve the question of

the liability of a railroad company for the safe carriage of its passengers.

A carrier of passengers upon an ordinary road is not responsible for its condition, as it is not under his control and supervision. A different rule, however, prevails as regards a railroad corporation, which, under extraordinary grants of franchise, builds, controls, and generally has the exclusive use of its road-bed and track.

A passenger on a railroad train has, by reason of the risk naturally incident to this mode of travel, the right to demand of the company for his safe passage that high degree of care and skill which very cautious persons generally, in their line of business, are accustomed to use, under similar circumstances, to prevent danger. This care and skill pertains to the original construction, by competent engineers and workmen, of the road-bed, track, engines, cars, and other appliances necessary to carry on properly the business of its road and to operate its trains; the frequent and careful examination of the same to see that they have been thus constructed and have been kept in safe condition and repair to prevent accidents, so far as human skill and foresight could reasonably anticipate and avoid the same; and also to the employment of a sufficient number of good, steady, and competent agents and employees to so conduct and control the train as to insure its careful and skillful management.

If the company is negligent in any of these particulars, and this negligence is the legal cause of injury to the passenger, it is liable in damages. (Shear. & Red. on Neg., secs. 266, 269, 444; Angell on Carriers, secs. 538, 540.)

Railroad companies, however, are not insurers of the safety of their passengers further than could be required by the exercise of such a high degree of foresight as to possible dangers, and such a high degree of prudence in guarding against them, as would be used by very cautious, prudent, and competent persons under similar circumstances. (Angell on Carriers, secs. 568, 570; Cooley on Torts, sec. 642; Galena and Chicago Railroad Co.

*v.* Fay, 16 Ill., 558; Bowen *v.* N. Y. C. Railroad Co., 18 N. Y., 411.)

This, though, is not to be understood to require of the company every possible precaution which ingenuity might suggest or the skill of science might afford, by which accidents may be avoided, but that it should adopt such precautions of known value as have been practically tested, and should employ such necessary skilled labor, service, and experience as is reasonably within its power to have secured.

The test of liability is, not whether the company used such particular precaution as is evident after the accident happened might have averted it had the danger been known, but whether it used that degree of care and prudence which very cautious, competent persons would have used under the apparent circumstances of the case to prevent the accident, without reasonable knowledge that it was likely to have occurred. (Shear. & Red. on Neg., sec. 266; Bowen *v.* N. Y. C. Railroad Co., 18 N. Y., 408.)

A railroad company is required to so construct its road-bed and track as to avoid such dangers as could be reasonably foreseen by competent and skillful engineers might be occasioned from the ordinary rain-falls and freshets incident to the particular section of the country through which it is constructed. But it would not be guilty of such culpable negligence as to make it liable in damages if it failed to provide against such extraordinary floods, or other inevitable casualties caused by some hidden force of nature unknown to common experience, and which could not have been reasonably anticipated by the ordinary engineering skill and experience required in the prudent construction of such railroad.

If an accident should happen from such cause on a road-bed and track which had been properly constructed and kept in good repair, when the agents and employees in charge of the train were in the due exercise of that degree of caution and prudence necessary at all times, and when they did not have, from information conveyed to them, or from their own per-

sonal observation, reasonable grounds to anticipate impending danger, and consequently did not use such extraordinary precautions as might have otherwise averted it, then the law characterizes it as an act of God, or such inevitable accident as is incident to all human works, and which would relieve the company from liability.

Even under the rigid rules of the common law, which made common carriers insurers of the safe delivery of all articles committed to their care, such cause would have excused them. (Shear. & Red. on Neg., sec. 270; Withers *v.* North Kent Railway Co., 3 Hurl. & N., Am. ed., 969; Railroad Co. *v.* Reeves, 10 Wall., 176; Livezey *v.* Philadelphia, 64 Penn., 106.)

The undisputed facts in this case show, substantially—

1. That defendant's road was of first class, only three years old, in good order at the place of the accident, and that the ties and iron were sound and good.

2. That in the latter part of the day, and about dark of the day of the accident, an unprecedentedly heavy rain fell in that locality, which was not general, but which caused the embankment to give way under the train as it passed over the place, and thus caused the disaster.

3. That the track at that place was sound and in good condition, as far as could be seen, only one hundred and twenty-five minutes prior to the occurrence, when the north-bound train passed over it.

4. That between that time and the occurrence of the accident, that section of the road embracing the place of the accident was inspected and found and left in good condition, and was still in good condition at the time the wrecked train ran on it, as far as could be seen; had its usual appearance to an engineer who had been running over it ever since the road was built.

5. That the train and engine were in good condition, having been so found, on examination, only one hour before the accident, and were properly manned.

6. That the accident occurred seventy minutes after leaving

Palestine, and sixteen miles from that place, when the train was running at about half-speed, on a track which was apparently safe at all times for that rate.

7. That it had rained during the day at Palestine, but not so hard as to make it necessary to give orders in reference to the track.

The evidence, as thus disclosed by the record, shows that the defendant-company had used a commendable degree of skill, prudence, and vigilance in the construction and management of its road, and that the misfortune to the plaintiff was the result of one of those inevitable accidents of which passengers assume the risk, and for which the law does not hold the company responsible in damages. (Angell on Carriers, sec. 523.)

We are of opinion that the court erred in the charge as above shown, and also in refusing a new trial, because the verdict was contrary to the law and the evidence; for which errors the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered March 18, 1880.]