GULF, C. & S. F. RY. CO. v. CONLEY et ux.  (No. 727.)*

(Court of Civil Appeals of Texas. Beaumont. Dec. 6, 1921. Rehearing Denied Dec. 12, 1921.)

1. Appeal and error ⟺1040(11)—Overruling of special exception to item of damages not submitted held immaterial if erroneous.

The overruling of a special exception to an element of damages which was not submitted in the court's charge for the jury's consideration, if error, was immaterial.

2. Trial ⟺256(10)—Instruction defining proximate cause held not affirmatively erroneous, and any fuller instructions should have been requested.

In a passenger's action for injuries, an instruction that an act might be said to be the "proximate cause" of an injury when the injury was the natural and probable consequence of the negligence or wrongful act, and which in the light of attending circumstances should have been foreseen was not affirmatively erroneous, but correct so far as it went, and if defendant thought any fuller definition necessary for the protection of its rights it should have been requested.

3. Trial ⟺256(10)—Instruction as to degree of care required of carrier not affirmatively erroneous, so as to require reversal without request for fuller instructions.

In a passenger's action for injuries, an instruction that a carrier of passengers was required to exercise the greatest degree of care which could be exercised under all the circumstances short of a warranty of its passengers was not affirmatively erroneous, so as to require a reversal in the absence of a request for an instruction more fully explaining the degree of care required of defendant as a carrier of passengers.

4. Trial ⟺296(3)—Instruction as to termination of contract of transportation not injurious in view of other instructions.

In an action for injury to a passenger who claimed that the station of her destination was not announced, and that a sufficient time was not given her to alight after she learned that it was her station, an instruction that a contract of a railroad company with a passenger did not terminate until he had alighted, if incorrect, held not injurious to defendant, in view of other instructions under which the jury could not have found for plaintiff if she was guilty of contributory negligence in remaining on the train after a reasonable time had been allowed her in which to alight or in any other respect, or unless defendant was negligent in not allowing her a reasonable time to alight.

5. Damages ⟺208(3)—Question of permanent injury held for jury.

In an action for injuries, where there was evidence that plaintiff was confined to her bed, and suffered intense and excruciating pain for several months and was wholly incapacitated to perform her household duties, that a major

---

⟺For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted March 1, 1922.

operation was performed, and that at the time of trial plaintiff's weight was much reduced, and she was still unable to discharge her household duties, and still suffered pain, the issue of permanent injury was one for the jury, though the doctor performing the operation testified that thereafter she regained her health.

**6. Damages** ⊕⟲216(3)—**Instruction held not to permit double recovery.**

In an action for injuries, an instruction to assess the damages in such sum as would fully compensate plaintiff for the injuries, taking into consideration as elements of damages, mental anguish, and physical suffering resulting from the injury, including such as would in reasonable probability result in the future, if any, and also the reasonable present value of her lost capacity or power to earn money or attend to her affairs in the future, etc., was not erroneous as allowing double damages for the same injury.

**7. Carriers** ⊕⟲320(26)—**Evidence held to make jury question as to announcing station and allowing reasonable time for alighting.**

In a passenger's action for injuries, evidence held to make questions of fact for the jury as to whether the station of plaintiff's destination was properly announced on arrival of the train and whether she was allowed a reasonably sufficient time to disembark from the train, circumstanced and conditioned as she was.

**8. Trial** ⊕⟲208—**Instruction withdrawing evidence from consideration properly refused when ground of negligence to which it related not submitted.**

In a passenger's action for injuries, though the petition alleged a promise by the conductor to render assistance to plaintiff in alighting, and a failure to render such assistance, and to some extent evidence on that issue was admitted, where the charge did not submit that issue of negligence to the jury it was in effect withdrawn, and it was not error to refuse an instruction that no duty rested on the carrier to assist plaintiff from her seat to the platform, and that testimony as to an agreement with the conductor and in reference to such assistance was not binding on defendant, and should not be considered.

**9. Trial** ⊕⟲260(8)—**Instruction held properly refused where other instructions affirmatively submitted issue of contributory negligence.**

An instruction that it was the duty of a railroad company to announce a station in an audible voice and to stop its train a length of time reasonably sufficient for passengers in the exercise of reasonable diligence to disembark and that if this was done the verdict should be for defendant held properly refused in view of other instructions pointedly and affirmatively submitting the issue of contributory negligence.

Appeal from District Court, Montgomery County; J. L. Manry, Judge.

Action by Charles L. Conley and wife against the Gulf, Colorado & Santa Fé Railway Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

F. J. & C. T. Duff, of Beaumont, and W. N. Foster, of Conroe, for appellant.

McCall & Crawford, of Conroe, for appellees.

HIGHTOWER, C. J. This is a suit by the appellees, Charles L. Conley and his wife, Susie Conley, against appellant, Gulf, Colorado & Santa Fé Railway Company, for the recovery of damages alleged to have been sustained in consequence of personal injuries received by Mrs. Conley, and for medical bills and physicians' bills paid and incurred in treating Mrs. Conley for such injuries. There were other elements of damages claimed by Charles L. Conley, but such elements are immaterial here, as the record stands before us.

Appellees' petition alleged, substantially, that on the evening of July 2, 1920, Mrs. Conley boarded one of appellant's passenger trains at Conroe, in Montgomery county, to be transported to the little station of Dobbin, on appellant's road in the same county; that Mrs. Conley was unaccustomed to traveling on trains, and on this occasion was accompanied by no one except her little boy, who at that time was nearly seven years of age; that Mrs. Conley had a heavy suit case and four packages, which constituted quite an incumbrance to her; that Mrs. Conley knew that she would arrive at the station of Dobbin after dark, and that she was an entire stranger at that point, knew no one there and that incumbered as she was, she would need assistance from appellant's servants in charge of the train in alighting therefrom; that when appellant's conductor, shortly after the train had started from Conroe, came around to get her ticket, Mrs. Conley informed the conductor that she was unaccustomed to riding on trains, and that she had her little boy with her, and had a heavy suit case and other bundles, and asked the conductor to render her assistance in getting off the train at Dobbin, and that the conductor promised that he would render such assistance. The plaintiff then alleged that the train reached Dobbin that night between 8:30 and 9 o'clock, and that the night was dark, and that Mrs. Conley did not know that the train had reached Dobbin until the train was there and had stopped, and that appellant's agents and servants in charge of the train did not announce in an audible voice to her the station of Dobbin, though she was listening for such announcement, and that she was not aware that the train was actually at the station until another lady in the same coach with her got up from her seat and came back to where Mrs. Conley was sitting and told her that the train was then at Dobbin; that thereupon Mrs.

⊕⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Conley immediately, or as soon as she could, incumbered as she was, arose from her seat, and after waking her little boy up started out of the coach in which she was riding towards the front, and carrying with her her grip and bundles, and that after she had proceeded a distance of some five or six seats from where she was sitting the train was started suddenly on its journey, unawares to her, and that she was thereby caused to fall upon the arm of one of the seats in the coach and from there to the floor, and that in consequence of such fall she sustained serious and permanent injuries, which were sufficiently described in the petition.

The petition alleged substantially that appellant's agents and servants in charge of the train were guilty of negligence in failing to properly announce the arrival of the train at Dobbin, and in failing to assist her off the train, after being notified of the necessity for such assistance, and in starting the train before she had been allowed a reasonable time to alight therefrom, circumstanced and incumbered as she was, and that such negligence was a proximate cause of her being thrown over the arm of the seat and to the floor, and injured. The petition then alleged, substantially, that, after being put in motion, and after she had been thrown and injured, as just above stated, the train proceeded some 200 yards distant from the depot at Dobbin before it again stopped, and that the train was again stopped at such distance from the depot, and she was compelled to there alight in the dark, and, incumbered as before stated, and injured as she had just been, and that being thus compelled to get off the train in the dark, at a distance of 200 yards from the depot, and being an entire stranger there, and being already injured, she was greatly frightened, and was compelled, in her injured condition, to walk back a distance of 200 yards to the station, and that on account of such fright and fatigue she was made sick, and sustained further damages in the sum of $2,500. This, while not in detail, states, substantially, the pleading of the appellees in so far as the same is material here.

Appellant answered by a general and several special exceptions, none of which are material here, by general denial, and also by a special plea of contributory negligence, which was, in substance, that when appellant's train arrived at Dobbin its servants and agents properly announced the arrival of such train at the station in an audible voice, and that such train was stopped at Dobbin a reasonably sufficient length of time to have afforded Mrs. Conley an opportunity to alight therefrom, if she had exercised proper care and diligence to do so, but that Mrs. Conley, though having been notified of the arrival of the train at Dobbin, and notwithstanding she had been allowed a rea-

sonably sufficient time in which to alight therefrom, negligently failed to use due and proper care to alight from said train, but remained thereon until it had again started, and that because of such failure on her part she was guilty of negligence which barred her recovery.

The case was tried with a jury, and was submitted on a general charge, and the verdict was in favor of appellees for $2,500, and judgment was entered accordingly.

[1] The first assignment of error relates to the action of the trial court in overruling a special exception relative to an element of damages which, as we view the charge of the court, was not submitted at all for the jury's consideration, and, if the action of the court complained of was error, it became entirely immaterial and the assignment is overruled.

[2] By the second assignment it is complained that the trial court committed affirmative error in its definition of "proximate cause," it being the contention of appellant that the trial court's definition "is inaccurate and erroneous, and is calculated to confuse and mislead the jury and permit the jury to consider an act the proximate cause of an injury, though the injury was not caused or superinduced by said act."

The proposition under the assignment is:

"To be a 'proximate cause,' the act or omission must be the direct or immediate cause, having a continuous and natural causal connection between the negligence and the injury, and must not be broken by any intervening act of negligence; and the wrongful act or omission, in order to be the 'proximate cause' of injury, must be such that the injury or some similar injury might have been foreseen or anticipated by the exercise of reasonable care."

The court's definition of proximate cause was as follows:

"An act may be said to be the proximate cause of an injury when the injury is the natural and probable consequence of the negligence or wrongful act, and which, in the light of attending circumstances, should have been foreseen."

No authority is cited by counsel for appellant in their brief in support of this assignment and proposition, and we are of the opinion that none could be cited in support of the contention that the trial court's definition of proximate cause was affirmatively erroneous. Appellant did not ask any fuller definition of proximate cause, but merely objected to the court's definition, as before stated. We are certain that the definition given by the court was not affirmatively erroneous, but was correct so far as it went, and, if any fuller definition had been thought necessary for the protection of appellant's rights, a request should have been made therefor. We think that the definition of proximate cause, as given by the court, was, substantially in accord with that approved

in the case of T. & P. Railway Co. v. Bigham, 90 Tex. 226, 38 S. W. 162. In the late case of Dawson v. King, 222 S. W. 164, the Commission of Appeals, speaking to the point of proximate cause, said:

"In this, as in all cases involving negligence, in order to liability, it must appear that the injury, not necessarily the precise, actual injury, but some like injury, 'was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances.' "

See, also, S. A. & A. P. Ry. Co. v. Behne, 198 S. W. 680, and City of Fort Worth v. Patterson, 196 S. W. 251. There are numerous authorities in this state holding, substantially, that the trial court's definition of proximate cause in this case was not affirmatively erroneous. The assignment is overruled.

[3] The third assignment complains of the following paragraph of the court's charge:

"A carrier of passengers is required to exercise the greatest degree of care which can be exercised under all the circumstances short of a warranty of its passengers."

Such charge was objected to by appellant on the ground that the "same does not state a correct rule of law and is more burdensome upon, and imposes a greater duty upon, a carrier of passengers than is required by law, and defendant, therefore, says that the jury may be misled thereby to defendant's injury."

The proposition under this assignment:

"Railroad companies are not insurers of the safety of their passengers further than could be required by the exercise of such a high degree of foresight as to possible dangers, and such a high degree of protection in guarding against them as would be used by very cautious, prudent and competent persons under similar circumstances."

Undoubtedly, the proposition announces a correct rule of law in this state, but it does not follow that the charge complained of was reversible error in this case. Appellant's counsel, in support of this assignment and proposition, cite several authorities. Among them, and being the first, is the case of Railway Co. v. Welch, 86 Tex. 203, 24 S. W. 390, 40 Am. St. Rep. 829, an opinion by the Supreme Court, speaking through Associate Justice Brown. In that case, in the trial court, the trial judge instructed the jury that the duty rested upon the railroad company to use "all possible care" for the safety and protection of its passengers, without explaining or qualifying in any way the sense in which the word "possible" should be understood. The Court of Civil Appeals for the First District in that case certified, for the decision of the Supreme Court, the following question:

"1. Whether or not in such a case it is correct to charge the jury that the carrier must use 'all possible care,' without explaining or qualifying the sense in which the word 'possible' is to be taken?"

"3. Whether or not the failure to more fully explain the language used was positive error, or was simply an omission which should have been supplied by the request for a special charge?"

Judge Brown, in answering the certified question, among other things, said:

"It is not a correct statement of the law to say that a passenger carrier is bound to 'use all possible care' to provide for the safe conveyance of passengers. Our Supreme Court has laid down the correct rule of liability in Railway v. Halloren, 53 Texas, 53, in which it is said: 'Railroad companies, however, are not insurers of the safety of their passengers further than could be required by the exercise of such a high degree of foresight as to possible dangers, and such a high degree of prudence in guarding against them, as would be used by very cautious, prudent, and competent persons under similar circumstances.' This rule of liability is sustained by the best text-writers and nearly all the adjudicated cases. [Citing a number of adjudicated cases.]"

"In Railway v. Halloren, supra, after stating the rule of liability as above quoted, Justice Bonner, delivering the opinion, said: 'This, though, is not to be understood to require of the company every possible precaution which ingenuity might suggest or the skill of science might afford by which accidents may be avoided, but that it shall adopt such precautions of known value as have been practically tested, and should employ such skilled labor, service, and experience as is reasonably within its power to have secured.'

"Mr. Hutchinson, in his excellent work on Carriers of Passengers, section 501, says: 'Although the form of expression is sometimes varied, and the rule is stated as requiring "the greatest possible care and diligence," "the utmost care and diligence of very cautious persons," "the most perfect care of a cautious and prudent man," and other similar phrases, the real meaning intended by them all is that the care and circumspection to be required is the utmost which can be exercised under all the circumstances, short of a warranty of the safety of the passengers.' And in section 502 of the same work it is said: 'When it is said that the carrier of a passenger must provide for his safety "as far as human foresight will go," it is not meant he will be required to exercise all care and diligence of which the human mind can conceive, or all the skill and ingenuity of which it is capable.'

"In the case of Levy v. Campbell, 19 Southwestern Reporter, 438, the court approved a charge that the carrier is bound to use the 'utmost practical care in providing for the safety of passengers'; and in Gallagher v. Bowie, 66 Texas, 265, this court approved a charge that the carrier is bound to use the 'utmost care' to provide for the safety of passengers.

"In the case of Railway v. Worthington, 21 Maryland, 288, the term 'utmost care' is defined to mean 'all the care and diligence possible in

the nature of the case.' Utmost care means the greatest care, and falls short of the expression of the charge used here, in this, that it is understood to apply to the surroundings as matters then stood and could be foreseen; but all possible care has a broader and more unlimited meaning. The word 'possible,' as used in this connection, means 'capable of being done.' Webst. Dic., word 'possible.' From the charges as given the jury must have understood that the carrier was bound to do everything that it was capable of doing to prevent the injury. From the standpoint of the jury, looking at the occurrence retrospectively, there is perhaps scarcely an accident in the course of human affairs in which it would not appear that something could have been done which was not done to avoid the injury; yet, viewed as a possible future danger, the very thing that would thus be suggested would never occur to the most cautious and prudent man as necessary to his own safety or that of others.

"The charge is not more objectionable for what it means than for the want of any definite meaning. The object of giving a charge to a jury is to furnish them a guide by which they can determine from the evidence whether or not the party sought to be charged has done or failed to do the things which by law create the liability. The term 'all possible care' might be understood by one man to mean all that the party could foresee, while it might mean to another all that might have been done as viewed after the occurrence. Besides, the law does not require everything to be done which might be foreseen, but only such as might appear to be necessary, having that care for the safety of the passengers that a very prudent man would have, and to exercise that high degree of care that such man would exercise under the same circumstances. * * * The jury could, from the instruction given, have no just or intelligent idea of what the law required the defendant to do to secure the safety of passengers. * * *

"The charge given in the case under consideration was not merely a defective statement of the law, but was a statement of a proposition that was not the law of the case in any phase of it. It was positive error, and stood excepted to under the Revised Statutes, article 1361. No special charge need be asked under such circumstances. If the defendant had asked a special charge contradictory of this, and it had been given, it would not have cured the error, for the jury would have been left in doubt as to which was to govern them, and this would have been error."

It will be seen, upon careful consideration, that the charge in the Welch Case, telling the jury that it was the duty of the railway company to use "all possible care," was quite different from the charge in this case, which told the jury that "a carrier of passengers is required to exercise the greatest degree of care which can be exercised under all the circumstances short of a warranty of its passengers." In the case under consideration here, the jury were told, in effect, that the railway company was required to use the greatest degree of care which the company could use, under all the circum-

stances then attending, but that the company, in the contract of carriage, did not warrant the safety of its passengers. This, we say, was the effect of the charge given the jury.

It is also insisted by able counsel for appellant that the late case of Railway Co. v. Luten, 228 S. W. 159, the opinion in which was by the Commission of Appeals, and approved and adopted by the Supreme Court, sustains the contention that the charge in this case was affirmatively erroneous. We cannot agree with counsel in this contention. Upon reading the Luten Case, it will be seen at a glance the reason for our dissent. The injured person in that case was a pedestrian crossing over the tracks of the railway company, and the care there owed to him by the company was only ordinary care, or such care as an ordinarily prudent person would have exercised under the same or similar circumstances, and the degree of care required for a passenger was not under consideration by the court. We really think that the Luten Case has no relevancy whatever to the question here under consideration.

In Railway Co. v. Keeling, 102 Tex. 521, 120 S. W. 847, it was held that, in an action by a mail clerk on a railway train, who sued for damages because of personal injuries attributed to negligence on the part of the company, that a charge by the trial court which told the jury that the defendant, the railway company, as a carrier of passengers, was compelled to exercise "a high degree of care" and "the utmost care" was not an affirmatively erroneous charge. Justice Williams delivered the opinion of the court, and, among other things, said:

"This case is presented upon certified questions. The action is one by a passenger against a carrier for damages for injuries alleged to have been sustained by plaintiff through the carrier's negligence.

"The trial court in its general charge instructed the jury that the defendant owed plaintiff 'a high degree of care to prevent his injury in the operation of said train,' and that 'a failure to exercise this high degree of care would be negligence.'

"And at the request of plaintiff the court gave the following charge: 'You are charged by the court that plaintiff, G. A. Keeling, as shown by the evidence in this case, was a mail clerk traveling on and over defendant H. & T. C. R. R. from Houston to Denison. You are further charged that as said mail clerk he stood in the position of a passenger while traveling as said clerk on and over said defendant's road, and said defendant owed him the duty of using the utmost care for his safety and protection while he was so traveling as said clerk over its said road, as looking to his safety and protection. You are further charged by the court that said Keeling in his capacity as said clerk and in his said relation to said defendant as passenger, would have a reasonable time after reaching its destination, namely, Denison, to remove the mail in

his charge from the mail car and to get off said car. If you find from a preponderance of the evidence that said mail car was moved by the agents and servants of said H. & T. C. R. R. before said Keeling had a reasonable time to remove said mail, if any, from said car, and to get off said car, and if you further find that said movement, if any such, was not made by said agents and servants of said company with the utmost care for said Keeling's safety, and that owing to said movement, if any, and as the proximate cause thereof said Keeling was injured, then you are charged to find for the plaintiff as against said defendant, the H. & T. C. R. R.'

"The questions stated for decision are the following:

" 'Question 1. Was it an erroneous statement of the law, constituting it reversible error in the case, to instruct the jury, as was done in the special charge, that the duty the appellant owed the appellee was to use "the utmost care for his safety and protection while he was so traveling as said clerk over said road, as looking to his safety and protection?"

" 'Question 2. The main charge instructing the jury "in the discharge of his duty he had no control or management of said train, and the defendants, their agents and employés owed him a high degree of care to prevent his injury in the operation of said train," and the special charge requiring the use of "the utmost care for his safety and protection while he was so traveling as said clerk over said road, as looking to his safety and protection," were the two instructions as worded and read and considered together, reversible error in the case as in effect imposing upon the railway a greater burden for the safety of appellee than required by law, and calculated to lead the jury to understand that the appellant company was an insurer of the safety of the appellee?' "

Judge Williams proceeded to answer these questions as follows:

"In the case of Gallagher v. Bowie, 66 Texas, 266, this court said of a charge which required of a carrier the 'utmost' care: 'The charge properly stated the degree of care exacted by the law of carriers of passengers. Thompson on Carriers, 200; Hutchinson on Carriers, § 501; Shear. & Redf. on Neg. § 266. That degree is generally described by the authorities as "the utmost," and the use of this expression in the charge was not objectionable. If it needed explanation or qualification, appellant should have requested a special charge.' This case has often been followed and has never been overruled and fully answers the first question. International & G. N. R. R. Co. v. Welch, 86 Tex. 205.

"It has often been held by this and other courts that the degree of care required by carriers of passengers is the highest. Therefore a charge which tells the jury that a high degree of care is exacted cannot be prejudicial to the carrier since it does not require greater care than the highest. Nor can the two instructions taken together operate prejudicially. The strongest against the carrier is the special instruction which requires the utmost care. The other could not be interpreted to require more. Its effect on the special instruction, if it could have any, would be to qualify it in favor of the carrier.

"While we hold that the special charges were not affirmatively erroneous and that they, therefore, furnish no cause for the reversal of the judgment, no more definite instruction having been requested, we agree with the Court of Civil Appeals in the opinion that such charges, attempting to define the carrier's duty only by the use of an adjective, are not apt to convey to the minds of jurors any very definite conception of the subject. When such phrases are used the standard by which the conduct of the carrier under investigation is to be judged should be given in connection with them, which standard is the conduct of prudent and skillful carriers in like situations. Jurors are not put in a position to determine what constitutes the 'utmost' or the 'highest,' or the 'high' degree of care referred to in charges, unless they are also told that it is that which such prudent and skillful carriers employ. It is the highest care of such carriers that constitutes the practical test."

Without discussing this assignment at greater length, we have concluded that the opinion of the Supreme Court in the Keeling Case is decisive of the contention under this assignment, and that the charge here complained of was not affirmatively erroneous, and therefore not reversible error, in the absence of a requested instruction by appellant more fully explaining the degree of care required by appellant as a carrier of passengers. We are sure that the charge complained of in this case was no stronger against the carrier than the charge in the Keeling Case. On the contrary, it is our opinion that the qualification in the charge of the trial court in this case, to the effect that the carrier did not warrant the safety of the passengers, made the charge in this case less strong against the carrier. In the Keeling Case, there was no qualification whatever of the degree of care, other than the word "utmost," which, as will be seen from the authorities, means "greatest care," "highest degree of care," etc., and we have not been cited to a single authority by the Supreme Court of this state which holds that it is affirmative error in a case of this character to instruct the jury that the carrier must use the utmost or the highest or the greatest degree of care for the safety and protection of its passengers. We conclude, therefore, that, since there was no request by appellant for any fuller charge on the degree of care, or further explanation in that connection, it is not entitled, under the holding of the Supreme Court, to a reversal of this judgment. We heartily agree with the suggestion of Judge Williams that it would be the better practice for the trial courts, in cases of this character, to tell juries that the degree of care required of a carrier of passengers is such as very cautious and prudent and competent persons would exercise, under the same or similar circumstances, and not

to indulge in such adjectives as "utmost," "greatest," or "highest," which are not calculated to give the jury any very definite guide as to the care that the carrier is required by law to exercise. But since there was no special request for further instruction in this case on the point here involved, we are constrained to hold that no reversible error was committed by the charge given, and the assignment will be overruled.

The trial court's charge to the jury was in part as follows:

"A contract of a railroad company with its passengers does not terminate until he has alighted from its car. * * * A carrier who sells a passenger a ticket to a station, thereby contracts to transport him to the station and to stop there long enough to allow him a reasonable time to alight with safety. Now, bearing in mind the foregoing instructions of law, if you find by a preponderance of the evidence, by which is meant a greater weight of credible evidence, that plaintiff Mrs. Susie Conley, about July 2, 1920, became a passenger on the defendant railroad company's road from Conroe to Dobbin, and that upon arriving at the station at Dobbin the defendant company, through its agents, servants, and employés operating said train, failed to announce, in an audible voice, to her the arrival of said train at Dobbin, and failed to stop its train a reasonable length of time for her to disembark and get off, circumstanced and conditioned as she was, and further knowing that she was in the act of disembarking, and further you find that said defendant company failed to stop its train a reasonable length of time for her to disembark, circumstanced and conditioned as she was, and further you find that in making an effort to disembark, without fault or negligence on her part, as herein defined, she was thrown and injured, as alleged in plaintiffs' petition, and further you find that defendant company, its agents and servants, failed to exercise the greatest degree of care, which can be exercised under all the circumstances short of a warranty of its passengers, and further you find that the same was negligence, as herein defined, and further you find that the plaintiff Mrs. Susie Conley was injured, as alleged in her petition, then you will return a verdict in this case in favor of plaintiff for whatever amount or sum of money that you may determine will fairly compensate her for the injuries. * * *"

[4] Appellant in due time presented its objections to the following portion of the above-quoted charge:

"A contract of a railroad company with its passengers does not terminate until he has alighted from its car."

The objection was overruled, and the court's action in that regard is assigned as error, on the ground that the charge does not state a correct rule of law, and that it ignores the destination of the passenger under his contract of carriage. The proposition under the assignment is:

"A contract of carriage of a railroad company with its passengers does not extend beyond the point named in the contract as the destination of a passenger, and, if the railroad company stops its train, and gives the passenger a reasonable time within which to disembark, the contract ceases and the erstwhile passenger becomes a licensee."

In T. & P. Railway Co. v. Miller, 79 Tex. 78, 15 S. W. 264, 11 L. R. A. 395, 23 Am. St. Rep. 308, the Supreme Court of this state, speaking through Chief Justice Stayton, among other things, said:

"The transit cannot be considered ended until the passenger has left the car, but, while this is so, the liability of the carrier, even in a case in which he has not used the proper degree of care, may be defeated by the contributory negligence of the passenger."

From the language just quoted, it is manifest that the Supreme Court in that case stated emphatically that a railway company's contract of carriage with a passenger does not end until the passenger has reached his point of destination under the contract and has alighted from the carrier's train. The passenger in that case, Mrs. Miller, was injured in the attempt to alight from the train at her point of destination. The defendant railroad company in that case had pleaded as a defense to the action contributory negligence on the part of Mrs. Miller in alighting from the train. The court, among other things, charged the jury:

"If you believe from the evidence that, on the arrival of the train on which Mrs. Miller was a passenger at Woodlawn, she used reasonable diligence, circumstanced and conditioned as she was, to get off said train, and that the train did not stop a sufficient length of time to enable her to alight from the same in safety, and that, while she was endeavoring to get off, the train started with a jerk, and caused her to fall, and in said fall she was, without failure on her part to use ordinary and reasonable care for her own safety, injured, then you will find for the plaintiff." "You are further instructed that if the train did not stop long enough at Woodlawn to enable Mrs. Miller, in her condition and circumstances, to get off in safety, and, when she was trying to get off the train, the train started, and while it was moving she undertook to get off and was injured, and in so trying to get off a moving train was herself guilty of a want of ordinary care, as defined to you hereinafter, then you will find for the defendant."

And further the court charged:

"If the train stopped long enough for Mrs. Miller to have gotten off safely, circumstanced and conditioned as she was, and she failed to use reasonable diligence to get off, and unnecessarily and negligently remained upon the train till it started, and then undertook to get off, and was thrown down and hurt, then the plaintiff cannot recover."

It was contended by the railroad company, defendant in that case, that the trial court was in error in giving the last-quoted charge, "because it made it necessary to show both

the negligence of plaintiff's wife and defendant's care to entitle defendant to a verdict." Judge Stayton, speaking to the point for the Supreme Court said:

"We do not think the charge susceptible of such a construction. The jury would rather have understood from that charge, considered alone, that plaintiff would not be entitled to recover if his wife did not use reasonable diligence to leave the train, if it stopped a sufficient length of time to have enabled her to do so safely, without reference to any other fact than that the train was in motion when she attempted to leave it; and, looking to all the charges quoted, there is not the least reason to believe that the jury were misled in any respect hurtful to appellant."

In the instant case the court, in its main charge, instructed the jury to the effect that, if Mrs. Conley was guilty of contributory negligence in her attempt to disembark from appellant's train at Dobbin, the verdict should be for the defendant, and then, at the request of appellant, as shown by its special charge No. 5, the jury was further instructed as follows:

"You are further instructed that, if you believe that, when the defendant's train approached the station at Dobbin on the night in question, its servants in an audible voice announced the station in the coach where said plaintiff was riding, and you further believe that defendant's train was stopped at said station, and you further believe that the plaintiff, Mrs. Susie Conley, failed to use reasonable diligence, and to make the effort of a reasonably prudent person, similarly situated, to leave the coach, and disembark from said train, and you further find that her action in that regard contributed to her injury as alleged, then you will let your verdict be for the defendant."

If it should be conceded that the portion of the court's charge in the instant case criticized by this assignment did not announce a correct legal proposition, nevertheless, considering together the charges given the jury as just quoted, we are convinced that no injury could possibly have resulted to appellant by reason of the charge complained of. The Miller Case, supra, supports, we think, our conclusion on this point. See, also, Railway Co. v. Finley, 79 Tex. 85, 15 S. W. 266. Construing the court's charge as a whole, which the jury is supposed to have done, it is manifest to the legal mind that the verdict could not have been for the plaintiffs unless the jury should find that appellant was guilty of negligence in not allowing Mrs. Conley a reasonable time to alight from the train, circumstanced and conditioned as she was, and it is equally as certain that the jury could not have found for the plaintiffs under the charge as a whole if Mrs. Conley was guilty of contributory negligence, in that she remained on the train after a reasonable time had been allowed her in which to alight therefrom, or if for any other reason, in her attempt to alight, she was guilty of contributory negligence. We overrule the assignment.

[5] The court, by paragraph 8 of its charge, submitted to the jury the issue of permanent injury to Mrs. Conley, over the objection of appellant, and this action is made the basis of the fifth assignment. The reason for the objection, as pointed out by the proposition, is because there was no evidence that would authorize the jury to find that any of the injuries sustained by Mrs. Conley were permanent.

As their first counter proposition to appellant's contention under this assignment, appellees submit that the assignment should not be sustained, because there is no complaint by appellant that the verdict as rendered is excessive to any extent. It may be that the counter proposition meets appellant's contention, and would be sufficient reason for overruling the assignment, and some of our Courts of Civil Appeals have so held. We do not, however, find it necessary to decide the point here, for we are fully convinced that the evidence in this case, considered as a whole, clearly raised the issue of permanent injuries to Mrs. Conley, and that therefore the court's action in submitting that issue was not error. The appellant makes no contention in this connection that Mrs. Conley's injuries, whatever they were, did not result from the fall that she received on appellant's train on the occasion in question. In this statement we would not be understood as meaning that such was not appellant's contention on the trial below, but what we mean to say is that there is no contention in this court, by way of any assignment of error, raising the point. Mrs. Conley testified substantially that prior to the time of the injuries in question she was a healthy and strong woman for her size; that her average weight before the injuries was about 122 pounds; that she was accustomed to do all of the ordinary and usual housework that is usually done by a housewife, such as cooking, washing, sewing, and all matters pertaining to an ordinary family's home; that she never, prior to the injuries, experienced any such pain or suffering as that which she underwent after the injuries, which commenced almost immediately thereafter. The practically undisputed testimony is that, from about the 8th day of July, 1920, six days after she claims to have been injured, Mrs. Conley was practically confined to her bed for a period of between four and five months, during which time, according to her testimony, she suffered most intense and excruciating pain in consequence of the injuries; that during such period she was wholly incapacitated to perform any character of her household duties, and these devolved upon her husband, assisted as far as he could be by the little seven year old boy.

According to Mrs. Conley's testimony, very serious injuries to several of the female organs resulted in consequence of the fall which she received in appellant's train, and, as time went on for the several months that she was confined in bed, the physical pain from these injuries became aggravated and more intense, and during practically all such period of confinement she was constantly under the treatment and attention of physicians. About four weeks before the trial of this case Dr. Falvey, of Conroe, performed an operation on Mrs. Conley which the doctor stated was considered in the medical profession a "major operation"; that when he commenced to treat Mrs. Conley it was manifest to him that she was experiencing severe pain and suffering, and that after proper examination he found that the operation was absolutely necessary in order to prevent her from being an invalid for life, and that in the absence of the operation she would have remained an invalid for life. The doctor then further testified that pain from this operation alone ordinarily continues from 24 to 36 hours, and that such pain is intense. The doctor went into detail as to the nature of the operation, and it is manifest to this court that it was a very necessary and painful operation, and, unquestionably, the nature of the injuries which necessitated it were such as to render it very probable that the effects on Mrs. Conley will be permanent, in the legal sense of that word.

Without going into all the details, but as indicating to some extent the effect that the injuries, if caused as claimed, had upon Mrs. Conley, we mention the fact, as shown by the record without dispute, that at the time of the trial in this case, which was in January, 1921, Mrs. Conley had been reduced in weight from 122 to 90 pounds, and on the trial, and notwithstanding the operation performed by Dr. Falvey, she testified that she was practically unable then to discharge any of the duties of her household, as she had formerly done; that she was still sick and nervous, and still suffered pain. Upon this state of facts the trial court did not err in submitting to the jury the issue of permanent injuries. It is true that Dr. Falvey, at the conclusion of his testimony, after stating Mrs. Conley's condition from the time he first saw her until the operation had been performed, further said that after the operation she regained her health, yet it is manifest to this court that Dr. Falvey did not intend to leave the impression that the effect of the injuries for which he treated Mrs. Conley had been entirely removed, and that she would be the same woman, physically, that she had been prior to such injuries. But, if such had been the meaning of Dr. Falvey's testimony, it would not have taken from the jury the issue of permanent injuries, in view of the testimony of Mrs. Con-

236 S.W.—34

ley and her husband, as reflected by the record in this case. The assignment must be overruled.

[6] Among other things, on the measure of damages the court submitted for the consideration of the jury the following charge found in paragraph 8:

"If the verdict is for the plaintiff, the jury will take into consideration the nature of her injuries, if any, and whether serious or permanent or otherwise, together with the other facts and circumstances in evidence, and the jury will assess her damages in such sum as they may believe from the evidence will fully and adequately compensate her for such injuries, if any, as she has sustained, on the occasion in question, taking into consideration, as elements of damage, mental anguish and physical suffering resulting to her therefrom, if any, including such as will in reasonable probability result to her therefrom in the future, if any, and also the reasonable value, if paid now, of her lost capacity and power to earn money, and attend to her affairs in the future, resulting to her therefrom, if any, and also such reasonable sum as she may necessarily have incurred liability for on account of medicine and medical attention in attempting a cure of such injuries."

To the above charge on the measure of damages, defendant objected as follows:

"Defendant excepts and objects to that portion of paragraph eighth of the court's general charge wherein he submits the elements of damage, and especially to that portion thereof telling the jury to take into consideration as an element of damages mental anguish and physical suffering resulting to her therefrom, if any, including such as will in reasonable probability result to her therefrom in the future, if any, and also the reasonable value of her lost capacity to attend to her affairs resulting therefrom, if any, and also the reasonable value, if paid now, of her lost capacity and power to earn money and attend to her affairs in the future, resulting therefrom, if any, because said charge permits a double recovery of damages."

By the proposition it is contended that the charge permits the plaintiffs to recover not only for "mental anguish and physical suffering resulting to her from the injury, including such as in reasonable probability may result in the future, and the reasonable value of her lost capacity to attend to her affairs, resulting from the injury," but also "the value, if paid now, of her lost capacity and power to earn money and to attend to her affairs in the future," which is clearly a permission or instruction to the jury that they could allow double damages for the same injury.

We do not believe that appellant's contention under this assignment is correct. We think the charge complained of, when properly construed, told the jury, in effect, that if the verdict should be for the plaintiffs they should consider, as elements of damages, the physical pain and mental suffering

that Mrs. Conley had undergone in consequence of the injuries up to the time of the trial, and also the value of her lost capacity to labor up to the time of the trial, and that, in the event the jury should find that the injuries sustained by Mrs. Conley were of a permanent nature, and that in consequence of such injuries Mrs. Conley's capacity to labor and earn money in the future had been diminished, the extent of such diminution would be considered by them, and, further, that if there was a reasonable probability, in the opinion of the jury from the evidence before them, that in consequence of such injuries Mrs. Conley would suffer physical pain and mental anguish in the future, then such future mental pain and physical suffering would also be considered by the jury in determining the amount that should be awarded plaintiffs as damages. If our construction of the charge is the correct one, then, undoubtedly, all the elements of damage submitted for the jury's consideration were proper to be considered by them under the evidence in this case, and the charge did not permit a double recovery, as contended by appellant. In this connection we have carefully read every authority found in appellant's brief under this assignment, and without discussing them we believe that the charges held objectionable in those cases as permitting a double recovery are easily distinguishable from the charge here complained of. The assignment will be overruled.

The seventh assignment raises practically the same legal question as is raised by the third assignment relative to the degree of care owed by a railroad carrier to its passengers. What we said in disposing of the third assignment in effect, disposes of the seventh, and it is overruled.

[7] By the eighth assignment complaint is made of the refusal of the court to peremptorily instruct a verdict in favor of appellant, it being contended by appellant that there was no evidence showing any negligence on the part of appellant or any of its agents and servants in charge of the train at Dobbin, where Mrs. Conley was injured. We overrule the assignment. Mrs. Conley testified, substantially, that her seat in the coach in which she was riding was near the rear end, and that she was not aware that the train had arrived at Dobbin until she was informed by a lady with whom she was not acquainted of that fact. This lady who informed Mrs. Conley of the arrival of the train at Dobbin occupied a seat in the same coach with Mrs. Conley, but nearer the front end of the coach, and Mrs. Conley testified, substantially, that shortly after the train had come to a stop this lady got up from her seat and came back to where Mrs. Conley was, and informed her that the train was then at Dobbin; that thereupon, and immediately, according to her testimony, Mrs.

Conley commenced preparations for leaving the coach, gathered up her grip and bundles, and woke up her child, and started to the front end of the coach, but that when she had proceeded a distance of some five or six seats in the coach, and without warning that the train was going to start, the train was suddenly started and she was thereby thrown over and on one of the seats in the coach, and from there to the floor of the coach, and was injured. She further testified, substantially, that up to the time the lady informed her of the arrival of the train at Dobbin she had not heard the station announced by any of appellant's employés, and that she was listening for the station of Dobbin to be called, and, while she could not testify positively that some employé of appellant did not announce the station, yet she leaves the clear inference that if the station had been properly announced in the coach in which she was riding, she would have heard it in time to have gotten off the train before it was again started. It is true appellant's brakeman or porter testified positively, that he announced the station of Dobbin when the train arrived, and that he did so in an audible tone of voice from near the front end of the coach in which Mrs. Conley was riding, and several other witnesses for appellant testified that the porter announced the station of Dobbin in some of the coaches ahead of that in which Mrs. Conley was riding; but the evidence as a whole is not conclusive that the porter announced the station of Dobbin in an audible tone of voice at the proper place in the coach in which Mrs. Conley was riding, and that she failed to observe such announcement, and that a reasonable time thereafter was allowed her to disembark from the train with reasonable safety. The issue of negligence made by the pleadings on this point was clearly one of fact for the jury, and the court would not have been warranted in peremptorily instructing a verdict for appellant. Counsel for appellant, by way of argument, contend that there was no evidence to the effect that there was any unusual jerking or jolting of the train, and that therefore no actionable negligence was shown. Whether or not Mrs. Conley's fall and injury were occasioned by an unusual jerk or jolt of the train is not the question, but rather the point is, Was the station of Dobbin properly announced on the arrival of the train, and was Mrs. Conley allowed a reasonably sufficient time thereafter to disembark from appellant's train, circumstanced and conditioned as she was? These were questions of fact for the jury, and they have been determined against appellant upon evidence sufficient to sustain the verdict.

[8] The ninth assignment complains of the refusal of the court to give the following instruction requested by appellant:

"Under the facts of this case no duty rested upon the defendant company to assist the plaintiff, Mrs. Susie Conley, in going from her seat in the coach to the platform for the purpose of disembarking, and the testimony of said plaintiff as to the agreement between herself and the conductor, as well as all other testimony in reference to such assistance, is not binding on the defendant, and you are therefore directed to disregard the same and not consider it for any purpose in making up your verdict."

Under the assignment, it is contended that a mere voluntary promise by a conductor to assist passengers off of a railroad train imposes no liability upon the railway company because of failure on the part of the conductor to keep such promise by entering the car and physically assisting the passenger from her seat to a place of exit, where the evidence fails to show that the conductor had notice of any condition or circumstance that would render such assistance necessary. Under the court's charge in this case, the failure of the conductor, or any other employé of appellant, to physically assist Mrs. Conley out of her coach was not submitted for the consideration of the jury as a ground of negligence, and therefore, under the holding of many decisions of the appellate courts of this state, that issue of negligence, as made by the petition, was, in effect, withdrawn from the jury's consideration. And, while it is true that evidence to some extent on that issue was admitted, yet we do not understand that it is reversible error on the part of a trial court to refuse to expressly take from the consideration of the jury evidence that had been admitted during the trial on some issue raised by the pleadings, but not submitted in the court's charge. If there is any decision to that effect emanating from any appellate court of this state, it has not been cited in appellant's brief, and we ourselves have not found any. There may be, perhaps, some such decision arising upon an extraordinary state of facts that would require such action on the part of a trial court for the necessary protection of a party, but we feel sure that the failure of the trial court to give the charge requested here should not work a reversal of this case, even if it should be conceded that the requested charge announced a correct proposition of law applicable to the facts of this case.

[9] Upon the trial, appellant requested the following special charge, after the requested peremptory instruction had been refused:

"You are instructed that under the facts of this case it was the duty of the defendant company to cause to be announced the station of Dobbin, when the train was approaching the same, in an audible voice and to stop its train at such station a length of time reasonably sufficient for passengers, in the exercise of reasonable and ordinary diligence, to disembark from said train. Therefore, if you believe that said station was announced in the manner indicated, and that defendant's train stopped at said station for such length of time, you will let your verdict be for defendant."

By the proposition under the tenth assignment, it is contended that the court in the main charge submitted the issue of Mrs. Conley's contributory negligence only in a negative way, and that therefore appellant was entitled to have the facts alleged by it as constituting contributory negligence submitted in an affirmative manner. This is the only proposition under the assignment. Reading the court's charge as a whole, we are convinced that the issue of contributory negligence was pointedly and affirmatively submitted for the consideration of the jury, and we feel sure that the issue was very pointedly submitted by appellant's special charge No. 5, which we have heretofore quoted in this opinion. This assignment points out no error, and it is overruled.

The eleventh assignment points out no error that could possibly be prejudicial to appellant, and it is overruled.

We have given all assignments careful consideration, and it is our conclusion that none of them present any error prejudicial to appellant, and that all should be overruled and the judgment affirmed; and it will be so ordered.